### STEWART v. BLALOCK.

1. HOMESTEAD.—A widow has a one-third interest in fee, under statute of distributions, in a homestead, set apart to her and her children, out of the real estate of her deceased husband.
2. IBID.—The right of homestead must be governed by the law in force at the time the debt, to the payment of which it is sought to be subjected, was created.
3. IBID.—Since the amendment of the Constitution in 1880, and the act of 1880, 17 Stat., 513, the homestead of the debtor is forever freed from debts contracted since that time.
4. LIMITATIONS.—An action by a creditor to subject the real estate of a decedent to the payment of his debt, after the same has been *bona fide* aliened by the heir, is barred by 3 and 4 W. & M.
5. ALIENATION—FORECLOSURE.—Real estate sold under foreclosure proceedings, by order of Court, is a *bona fide* alienation.
6. INTEREST OF MORTGAGOR—ALIENATION.—Mortgage purporting to cover the whole land, followed by sale for foreclosure, operates as a valid alienation *only* of the interest of the mortgagor.

Before WATTS, J., Pickens, September 22, 1894. Affirmed.

Action commenced January 8, 1894, by Tempy C. Stewart, Sallie Simmons, Susan Howard, E.W. Garret, Morning F. Garret, Alva V. Garret, Lillie O. Garret, and Verner Howard and Minnie Howard, by their guardian *ad litem*, J. W. Howard, heirs at law of Moses Jones, and A. C. Wyly, J. W. Arnold, creditors of Moses Jones, against Corrie M. Blalock, Robert W. Blalock, and L. F. Blalock, for possession of lot of land in town of Easley. Judgment in favor of heirs of Jones for two-thirds of lot. Plaintiffs appeal.

*Mr. J. P. Carey*, for appellants.

*Mr. J. E. Boggs*, contra.

Sept. 9, 1895.   The opinion of the Court was delivered by
MR. CHIEF JUSTICE MCIVER.   On the 2d day of October,
1883, Moses M. Jones died intestate, being seized and pos-
sessed of the real estate which is the subject of this action,
leaving as his heirs at law his widow and children.   On
the 11th of November, 1884, the widow, Margaret Jones,
commenced an action against the other heirs for partition
of said land, under which it seems that the creditors of
Moses M. Jones were called in to establish their demands,
and the two plaintiffs mentioned in the title of this case as
creditors, some time in the year 1885, established their
claims.   While this action for partition was pending, the
widow, Margaret Jones, filed her application for homestead,
under which the said land was assigned to her as home-
stead, and duly confirmed by an order of the Court, dated
26th September, 1885, and the action for partition was dis-
continued.   The widow, Margaret Jones, on the 17th of
June, 1887, executed a mortgage on the said land to the
Peoples' Bank, and under proceedings to foreclose said
mortgage, the land was sold and bought by Frank Ham-
mond, who, on the 29th of September, 1889, sold and con-
veyed the same to W. W. Blalock.   Some time after the
year 1891, the said W. W. Blalock died intestate, leaving
as his heirs at law his widow, the defendant, Corrie M. Bla-
lock, his father, the defendant, Robert W. Blalock, and his
brother, the defendant, L. F. Blalock.   After the death of
the said W. W. Blalock, his widow, the defendant, Corrie
M. Blalock, had the said land assigned and set off to her as
a homestead, and she has ever since been in the possession
thereof.   In the meantime, to wit: on the 14th of July,
1889, the widow, Margaret Jones, departed this life intestate;
and on the 8th of January, 1894, the present action was
commenced by the heirs of Moses M. Jones and, also, of
Margaret Jones, for the recovery of said land, and for parti-
tion of the same according to their respective interests; to

which action the creditors of Moses M. Jones, who had proved their claims under the previous action for partition, are made parties, plaintiffs.

The case was referred to a referee, who made his report, ascertaining the facts, and the same came before his Honor, Judge Watts, who rendered a decree, holding that the widow, Margaret Jones, took an undivided one-third interest in the land in fee, which passed to those claiming under the sale for foreclosure, and that the other two-thirds were subject to partition amongst the children of Moses M. Jones, discharged from his debts. He, therefore, rendered judgment, that the land be sold, and that the proceeds of such sale, after paying the costs and expenses of this case, and any lien for taxes, be applied as follows: First, to the amount ascertained by the report of the referee to have been paid by the defendant, Corrie M. Blalock, for taxes on the land. Second, one-third of the balance to the said Corrie M. Blalock. Third, the remaining two-thirds to the children and grand-children of said Moses M. Jones, according to their respective interests.

From this judgment both the heirs at law and the creditors appeal upon the several grounds set out in the record. By these grounds, the heirs at law impute error in the Circuit Judge in holding that the widow, Margaret Jones, took an undivided third interest in fee, and, on the contrary, contend that she took only a life estate, and that upon her death the land was subject to partition amongst the heirs at law of Moses M. Jones, according to their respective interests, while the creditors contend that they were entitled to have their debt paid before any partition could be made.

It is very evident that the primal question in this case is as to the nature of the estate which the widow, Margaret Jones, took in the land. Was it an estate in fee, so far as her distributive share thereof was concerned, as held by the Circuit Judge, or was it a mere life estate, as contended for by appellants? If there had been no creditors of the intestate, Moses M. Jones, at the time of

his death, there can be no doubt that this land would have descended to and vested in his widow and children, as his heirs at law, in fee simple, subject to partition amongst them in the proportions fixed by the statute of distributions— one-third to the widow and the remaining two-thirds to the children. Now, as it is well settled in this State at least, that the homestead provisions create no new estate, and do not invest estates already existing with any new qualities, or subject them to any restrictions, but simply secure a right of exemption by forbidding the use of the process of the court to sell certain property for the payment of debts (*Elliott* v. *Mackorell*, 19 S. C., at page 242, and *Chalmers* v. *Turnipseed*, 21 S. C., at page 136), and as it has been held in *Ex parte Ray*, 20 S. C., at page 248, that the homestead laws are not designed to alter or in any way affect the statute of distributions, it follows, necessarily, that the title to this land, even after its assignment as a homestead, remained vested in the heirs at law. The only effect, therefore, of the assignment of the homestead in this case, so far as the rights of the heirs at law were concerned, was simply to protect the property from the grasp of creditors, and did not in any way disturb or alter the rights of the heirs at law as fixed by the statute of distributions. It is very clear, therefore, that the appeal of the heirs at law cannot be sustained.

Next, as to the appeal of the creditors. That appeal practically rests upon the proposition that, upon the death of the widow, the exemption provided by the homestead laws terminated, and the land in question again became subject to the payment of the debts of the intestate before any partition could be made. So that our first inquiry is, whether that proposition is well founded. We are somewhat embarrassed, in pursuing this inquiry, by the fact that it nowhere appears in the "Case" when these debts were contracted, a fact which might become important in one aspect of the case. All that does appear is, that these claims were proved in the first partition suit some time in 1885, and,

therefore, these debts must have been contracted before that time, but how long before we are not able to ascertain. The cases of *Chalmers* v. *Turnipseed, supra,* and *Trimmier* v. *Winsmith,* 19 S. C., 283, are relied upon by these appellants to sustain the proposition above stated. But it will be observed that both of these cases were decided under the homestead laws as they stood prior to the amendment of the Constitution adopted 13th December, 1880 (17 Stat., 320), and, of course, prior to the act of 24th December, 1880 (17 Stat., 513), passed in pursuance of the mandate contained in that amendment: "It shall be the duty of the General Assembly, at their first session, to enforce the provisions of this section by suitable legislation;" for, as was held in *Trimmier* v. *Winsmith, supra,* the right of homestead must be governed by the law in force at the time the debt, to the payment of which it is sought to be subjected, was created; and in both of those cases the debt sought to be enforced were contracted prior to the year 1880. Indeed, in the case of *Chalmers* v. *Turnipseed* the debts must have been contracted prior to or during 1869, as the intestate died in August of that year. But in the present case the debts sought to be enforced must be regarded, in the absence of any evidence to the contrary, as having been contracted since 1880, as the first we hear of them was in 1885. The proposition contended for must, therefore, be tested by the law as it stood in 1880. This view is expressly recognized by the late Chief Justice Simpson, for, in delivering the opinion of the Court in *Chalmers* v. *Turnipseed,* after noticing the provisions of the acts of 1868, 1872, and 1873, he says: "There has been a subsequent act, the act of 1880, the one now of force, but it has no application here and need not be considered." And again he says: "The personal property, valued at $477.15, was set apart to her (the widow) in kind, under the act of 1873, and under that act was subject to partition among the children; but in this case there are no surviving children. Had there been, another difficult question would

have been presented. Section 2 of this act does not provide that when the homestead is set off, as the act directs, to the head of the family, it shall be forever discharged from all debts of said debtor then existing or thereafter to be contracted. This provision is also found in the act of 1880, but it is not in the act of 1872 (the act under which the real estate exemption was allowed in that case). What effect this section will have on homesteads set off under the act now of force has not been considered here."

So that it is very obvious that the question now presented is a new question, and may be stated as follows: Whether there is any such limit to the exemption provided for under the Constitution, as amended in 1880, or the act passed to enforce the provisions of that amendment, as is contended for by these appellants. A very brief review of the previous legislation upon this subject may throw some light upon this question. The first act—1868, 14 Stat., 20—expressly provided, in its fourth section: "The estate or right of homestead of the head of any family, existing at his death, shall continue for the benefit of his widow and minor children, and be held and enjoyed by them until the youngest child is twenty-one years of age, and until the marriage or death of the widow, and be limited to that period." By the fourth section of the act of 1872, 15 Stat., 230, it is provided: "That the homestead, when assigned as herein prescribed, shall vest in the head of the family in fee simple, and be freed and discharged from all debts and liabilities whatever, so long as he or she shall remain resident in the State, and no longer;" but in the eighth section of the same act, which secures a right of homestead to the widow and minor children of any deceased father or husband, there is no provision as to the time during which such exemption from debt shall continue. By the second section of the act of 1873, 15 Stat., 370, it is provided that after the proceedings for setting aside the homestead to the head of the family, under process against him, have become final by filing the return of the appraisers, it is pro-

vided that "the title of the homestead so set off and assigned shall be forever discharged from all debts of said debtor then existing or thereafter contracted;" and by section four of said act it is provided as follows: "If the husband be dead, the widow and children, if the father and mother be dead, the children living on the homestead, whether any or all of such children be minors or not, shall be entitled to have the family homestead exempted in like manner as if the husband or parents were living; and the homestead so exempted shall be subject to partition among all the children of the head of the family in like manner as if no debt existed." Next comes the act of 1880, 17 Stat., 513, which is entitled, "An act to determine and perpetuate the homestead," and seems to be the law now in force, at least so far as the question now presented is concerned. The second and fourth sections of that act are substantially the same as those above cited from the act of 1873. From this hasty review of the legislation upon the subject, it is apparent that in the earlier acts an intention to limit the duration of the exemption was expressed; but in the later acts no such intention appears; and, on the contrary, it appears that the intention was to declare the property exempted, forever discharged from liability for debt. This intention is expressly declared in the second section of the act of 1880, in the reference to property exempted under process against the debtor, and is necessarily implied from the fourth section of the act, providing for a claim of homestead by the widow and children, by the express declaration that such property is subject to partition amongst all the children "in like manner as if no debt existed." We do not think, therefore, that the proposition upon which the appeal of the creditors rests can be sustained.

There is, also, another ground upon which the appeal of the creditors, as against the defendant, Corrie M. Blalock, must be dismissed. While it is quite true that, aside from any question of homestead, a creditor of an intestate may, by proper proceedings, instituted within

the proper time, subject real estate of his debtor, which has descended to his heirs, to the payment of his debt, yet if such real estate has been *bona fide* alienated by the heir before the creditor commences his action for the recovery of his debt, his right to subject such real estate to the payment of his debt is gone by virtue of the provisions of the statute of 3 and 4 W. & M., chap. 14. So that, disembarrassing this case of any question of homestead, if it appears that the land which these creditors are seeking to subject to payment of their debts was *bona fide* alienated before these creditors commenced their proceedings to recover their debts, their right to do so is barred by such alienation.

Now, while a mortgage cannot be regarded as an alienation, under the statute of William and Mary (*Simons* v. *Bryce*, 10 S. C., 354); yet, if the mortgaged premises are sold under proceedings for foreclosure, that does amount to such an alienation. *Warren* v. *Raymond*, 12 S. C., 9. So that the inquiry here is whether the sale of the mortgaged premises was made before these appellants instituted their proceedings to recover their debts. The foreclosure sale was made in September, 1889, and these appellants could not have presented and proved their claims in the present case until after that time, for the present action was not commenced until the 8th of January, 1894. It is true, that it is stated in the "Case" that these appellants presented and proved their claims in 1885, under the first action for partition, but that action was discontinued, as we must assume, by the consent of the appellants, for without their consent the action could not have been discontinued after they had been called in and established their claims. *Adger* v. *Pringle*, 11 S. C., at page 547, and the cases there cited. If, therefore, the first action for partition was discontinued by consent, it must be regarded as if no such action had ever been instituted, and nothing had been done under it; and hence, to determine when these appellants commenced their action for the recovery of their debts, or what amounts to the same thing, when they presented and proved their

claims in this action (*Warren* v. *Raymond*, 17 S. C., 202), we must look alone to the time when these claims were presented in this action. It seems to us, therefore, that upon this ground these appellants can have no claim as against the one-third of the proceeds of the sale of the land ordered to be paid to the defendant, Corrie M. Blalock, as alienee of the interest of Margaret Jones; for certainly the mortgage of Margaret, though purporting to cover the whole of the land, followed by the sale for foreclosure, operated as a valid alienation to the extent of her interest (one-third) therein. *Young* v. *Edwards*, 33 S. C., 404.

It may not be amiss to add that while the claims of these appellants are spoken of in the "Case" as "judgments," yet we think they are improperly so designated, for it does not appear that any report on claims was ever made; and until such report was made and confirmed, we do not see how they could acquire any of the attributes of judgment.

The judgment of this Court is, that the judgment of the Circuit Court be affirmed.