### GEIGER v. GEIGER.

1. ELECTION.—The fact alone that widow has accepted a small amount of personal property does not show election to take under the will.

2. THE HOMESTEAD ACTS, giving homestead exemption to widow and children against debts contracted since 1880, are not unconstitutional.

3. IBID.—Can children of a decedent raise question against widow, that homestead statutes are unconstitutional?

4. HOMESTEAD—DOWER.—Claims by widow of homestead and dower are not incompatible.

5. IBID.—Widow cannot take homestead to the exclusion of children.

6. HOMESTEAD—DOWER.—A widow electing not to take life estate under will but to take homestead and dower, cannot take any part of homestead claimed by her, and set apart to her and her children, but the homestead must go as the lands are devised in the will in remainder.

7. DOWER.—In cases of mortgages, dower renounced, widow is entitled to one-third for life, or one-sixth in fee, as dower in surplus after paying mortgage debt in full, calculated on basis of actual sale, with interest from death of husband.

Before WATTS, J., Lexington, April, 1899. Modified.

Action by Jacob A. H. Geiger and Henry F. Geiger, as executors of Abram W. Geiger, against his widow, his remaining children, grand-children and creditors. From Circuit decree, the children, M. Carrie Nunnamaker and Elizabeth R. Leaphart, and their children, appeal.

*Messrs. Allen J. Green, P. H. Nelson* and *G. T. Graham,* for appellants. The former cites: *As to unconstitutionality of act allowing widow homestead:* Rev. Stat., 2129; Con. 1868, sec. 32, art. II.; 21 S. C., 375; 19 S. C., 279. *Claim of homestead and dower are inconsistent:* 8 S. C., 87; 22 S. C., 309; 26 S. C., 130; 45 S. C., 54; 4 Rich. Eq., 136; 22 S. C., 570; 37 S. C., 529. *Widow and children can claim no interest in homestead inconsistent with the will:* 56 S. C., 173. *Here creditors could require mortgagees to exhaust homestead first:* 33 S. C., 142; 41 S. C., 48; 47 S. C., 134. *Homestead goes to widow and children:* 54 S. C., 208. *As*

*to the basis for assessment of dower:* Bail. Eq., 64, 268; 49 S. C., 427.

*Messrs. Andrew Crawford* and *R. W. Shand,* for Mrs. Elizabeth B. Geiger, contra, cite: *Widow is not barred of her right of election:* 2 DeS., 54; 2 Rich., 218; 15 S. C., 161; 1 McC., 304. *As to quantum of dower:* 10 Rich. Eq., 285; 1 Hill, 203.

April 24, 1900. The opinion of the Court was delivered by

MR. JUSTICE POPE. Abram W. Geiger departed this life on the 10th January, 1896, leaving of force a last will and testament, with a codicil thereto. He appointed his wife, Elizabeth B. Geiger, the executrix, and his three sons, William A. Geiger, Jacob A. H. Geiger and Henry F. Geiger, the executors of his will—of these, however, his widow, Elizabeth B. Geiger, and his son, William A. Geiger, renounced such appointment, but his two sons, Jacob A. H. Geiger and Henry F. Geiger, qualified as such executors. In the year 1892, when the will was executed, the testator seemed to consider his indebtedness trifling, for he only provided for the sale of what is called his government tract of land, together with such cordwood as his sons, William, Jacob and Henry, might choose to cut anywhere on his lands to pay and discharge his indebtedness. By the terms of his will, he gave all his personal property absolutely, and all his real estate for life to his wife, the said Elizabeth B. Geiger, except the following real estate to his sons: 50 acres to Abram W. Geiger, and 25 acres each to his sons, William, Jacob and Henry. The remainder of his personal estate he gave to his three sons, William, Jacob and Henry, and his two daughters, Mrs. Elizabeth K. Leaphart and Mrs. Carrie Nunnamaker. But in the year 1895, he found himself indebted on his own account and on account of indorsements for his two sons, Jacob and Henry, and he, therefore, provided a codicil to his will, wherein he empowered his execu-

trix and executors to sell "Any of my lands that they may think proper to sell to pay my indebtedness and the notes of my sons, Jacob A. H. Geiger and Henry F. Geiger, that I have indorsed for them; these notes are at the Carolina National and the Loan and Exchange Banks." The testator had executed four mortgages, one to the Loan and Exchange Bank, two to the Carolina National Bank and one to Andrew Crawford, Esq., embracing therein every tract of land he owned except the tract known as the summer place, containing 94 acres. Under these circumstances, the qualified executors of the will of Abram Geiger brought their action against the widow and other five children of testator, together with every grand-child he had, as defendants, and his lien creditors, wherein they sought to sell lands to pay debts, to settle the estate under the direction of the Court, to call in creditors and to prevent their suits except under this action. An order was made calling in creditors and referring all the issues of law and fact to William D. Melton, Esq., as special referee, with leave to such referee to make preliminary report or reports as to the mortgage debts and the other claims of creditors. On the 8th November, 1898, the said special referee filed his report, to which exceptions were filed by Mrs. M. Carrie Nunnamaker and her children and Mrs. Elizabeth K. Leaphart and her children. These exceptions came on to be heard before his Honor, Judge Watts, who overruled them.

These exceptors now appear before us as appellants from the decree of Judge Watts upon grounds as follows: "Because his Honor erred in holding as follows: 'It is claimed that Mrs. Geiger elected to take the life estate given to her by her husband's will by receiving sixty-five bushels of corn and other personalty of the value of $58.78, and by permitting the executors to sell timber from the land. I cannot see in the testimony on these matters any evidence of an election by the widow. The personal property received by her must be charged to the exemption of personal property claimed by her and allowed to her by the referee's report, and be taken

by her as a part of such exemption. I, therefore, conclude that the widow is entitled to the dower and homestead demanded of (for) 'her during the reference as reported by the referee. The widow of a deceased is entitled to a homestead against her husband's debts out of his estate not only under the Constitution of 1868, but also under the amendment of that Constitution in 1880, and the Constitution of 1895. The provision is for the benefit of the family, and is not lost to the family because not demanded until after the death of the head of the family who contracted the debts.' In this, that 1. That under the amendment of 1880, to wit: section 32, article II., of the Constitution of 1868, and under the Constitution of 1895, the act of the General Assembly, now section 2129 of the Revised Statutes, extending the homestead exemption to the widow and children of the deceased head of the family, as against his debts, is null and void, and his Honor should have so held. 2. Because the estate of dower and the homestead exemption to the widow, as defined by this Court, are so inconsistent that it is impossible for both to vest at the same time in the widow. Her election to take dower necessarily forfeits her right to homestead, and he should have so held. 3. Because the homestead right under the Constitution and acts of Assembly is but an exemption from process, leaving dominion and estate as otherwise provided by law. In this case the husband (in whose right and against whose debts the exemption is claimed) having by his will and codicil exercised his rights of dominion, neither widow nor children can claim any right therein, inconsistent with the will and codicil. 4. Holding the act, now section 2129 of the Revised Statutes, constitutional, he erred in holding that the widow alone was entitled to the homestead exemption; whereas, he should have held that such exemption, if allowed, inured to the benefit of the widow and children. 5. Holding the act constitutional, he erred in not holding, under the circumstances of this case, all the children being of age, that the homestead exemption inured to the benefit of the widow and children, and is at once subject to partition

between them, in the proportions devised in the will of the deceased husband and father. 6. That his Honor further erred in holding and directing that sixty-five bushels of corn at their market price and $58.78, be charged to the exemptions of personal property claimed by the widow and allowed her by the referee's report, and be taken as part of such exemption; whereas, he should have directed that the widow account before the referee for all sums received by her, and all timber sold by her directions, and the same be charged against any interest the said defendant may have in said estate. 7. That his Honor further erred in holding, 'the price of the lands realized at the sale to be had hereunder to be the true value on which to assess the dower,' and confirming so much of the fifth conclusion of law of the referee's report as concluded as matter of law, 'That her (widow's) right of dower extends to all the real estate whereof A. W. Geiger died seized, but should be allowed to her only out of such surplus as may remain after payment of the amount due on said note and mortgage of the said Loan and Exchange Bank in full;' whereas, he should have held that the basis for the assessment of dower was the surplus—that is, the value of the mortgaged premises less the amount necessary to satisfy the mortgage on which dower is renounced."

We find no testimony in the "Case" which goes to show that Mrs. Elizabeth B. Geiger did anything to show her election to accept the provisions made in her husband's will except receiving about 65 bushels of corn and about $58.78 in some personalty. The record is silent as to her giving any direction as to cutting any cordwood on the lands. As doweress, she was entitled to full information touching her husband's debts before she could be required to elect between her rights as doweress and her rights under her husband's will. There is nothing going to show that she ever received any such information as to her husband's indebtedness. The conclusion of the Circuit Judge is correct as to this matter of election by the doweress.

Are the statutory provisions in favor of the widow and

children of the deceased debtor under the amendment of 1880 to the Constitution of 1868, commonly known as section 32, of article II., of said Constitution, and the like provision in ·favor of widow and children in the Constitution of 1895, unconstitutional and void?   Before we answer this question we might ask who alone can raise the constitutionality of these provisions?   Certainly creditors alone.   Here it is not the creditors of Abram W. Geiger who raise this question.   It is two of his children, and all of his grand-children.   But suppose we conclude that this question is properly raised here, why are these provisions unconstitutional?   Granted that it is now a fixed principle of law in this State that a homestead creates no estate, but is only an exemption from all legal process, in behalf of creditors, of certain property belonging to a debtor, if such legal process is invoked in his lifetime, or, after his death, such process is sought by his creditors.   In the former instance, the husband takes the exemption; in the latter instance, the widow and the children take the exemption.   *Ex parte Worley,* 54 S. C., 208; *Bostick* v. *Chovin,* 55 S. C., 427.   In the case at bar, there are no creditors whose claims arose prior to the adoption of the amendment to sec. 32, of art. II., of the Constitution of 1868.   Then the rule of law is that such amendment of the Constitution of 1868 became a part of every contract made *after the year 1880*—the date of its adoption. This being so, how can such provision be attacked?   As said in *McCandless* v. *R. R. Co.,* 38 S. C., 113 : "It is well settled law, that the laws which subsist at the time and place of the making of a contract and where it is to be performed, enter into and form a part of it, as if they were expressly referred to or incorporated in its terms.   *White* v. *Hart,* 13 Wallace; 653; *Van Hoffman* v. *City of Quincy,* 4 *Id.,* 535; *Edwards* v. *Kerzey,* 96 U. S., 601."   Thus much may be said as to the creditors.   But the children of a deceased debtor cannot occupy the vantage ground of creditors, for the truth is that children as such participate in the property of a deceased parent only as the law allows, or in the man-

ner there pointed out.    It may be recalled; that *prior* to the act of 1791 in this State, abolishing the law of primogeniture here, these exceptors would have had no interest in the estate of their father, only his oldest son.    Exception 1 is, therefore, overruled.

The question of incompatibility of the estate of dower and the claim of exemption of property under the homestead laws of this State, preventing the same "vesting at the same time in the widow," will now be considered.    It should be remembered that dower, after the husband's death, is an estate in the widow outside and apart from the estate of the deceased husband.    Homestead is no estate.    It is only an exemption of certain property of a debtor from the reach of creditors, and the provisions of law, after the death of the debtor fixing such exemption, does not exist for the widow alone, but for the *wife and children*.    Inasmuch as the estate of dower belongs to the widow in her own right, the homestead exemptions cannot touch that.    If there is a homestead exemption, it must be applied and confined to the estate of the deceased husband.    Where the deceased left a widow and children, and no homestead was set apart to the husband in his lifetime, such exemption must be set apart to the widow and children in the event creditors are seeking to subject a deceased debtor's property to the payment of their debts.    In the case at bar, the creditors of Abram W. Geiger, deceased, are seeking to subject his property to the payment of their debts—hence the homestead laws may be invoked, if certain conditions exist.    The claim of dower by the widow, and her claim of a homestead for herself and the children of Abram W. Geiger, deceased, are not incompatible, but, of course, we will discuss this matter of homestead a little later on.    The second exception is overruled.

We cannot sustain the third exception, because by the codicil the testator directed his executors to sell his real estate to pay his debts.    There are four mortgages covering the same as liens.    Inasmuch as a testator must be just before he is generous, his devises of his land cannot stand to his chil-

dren until his debts are paid. All the lands are mortgaged to creditors except "The Summer Place." To save this last from creditors, it will be necessary to invoke the claim of homestead. The widow does not claim under the will but against it.

The fourth exception must be sustained. The widow could not herself obtain a homestead in which the children of the deceased debtor could not participate, and inasmuch as the Circuit Judge seemed to hold adversely to this view, by providing that the sum of $1,000 realized from the sales of lands be held by the clerk of the Court of Common Pleas for Lexington County to satisfy the claim of the widow of A. W. Geiger, deceased, or for her claim of homestead, we must hold that such sum, while properly held by the clerk, could not be applied for the widow alone, but, on the contrary, for the widow and children.

Exception five is quite suggestive. In the case at bar, the widow has elected not to take under the will. The devisees of the land are three sons and two daughters. It would seem, therefore, that those devisees should receive the $1,000 set apart as a homestead. If A. W. Geiger had died intestate, the law would so operate as to vest this $1,000 in his widow and children as his heirs at law; but the testator had a right to alien his lands as he saw fit. By his will he gave it, as far as he could, to his five devisees— three sons and two daughters. If it had remained in devisees' hands as such, the creditors would take it. But it was taken from the testator's creditors through a homestead for his widow and children, and these children were his five sons and two daughters. However, the way the widow loses all her interest in a share in this $1,000, is that all the children are *sui juris,* and are entitled to have partition made between them of this $1,000, for the widow having taken dower, is not entitled to participate in any partition of her husband's estate. *Glover* v. *Glover,* 45 S. C., 54; *Ex parte Worley, supra.* The exception is well taken, and to this extent the decree of Judge Watts must be modified. Also,

by the same course of reasoning, the sixth exception must be sustained. Mrs. Geiger, the widow, had no right to have what she owed for 65 bushels of corn and the personal property she received, amounting to $58.78, credited on the exemption of personal property under the homestead laws. She has no right to participate therein, under the views hereinbefore expressed. As to the timber being charged to the widow's account, there is no testimony to sustain any such charge.

So far as the seventh exception is concerned, the true rule for assesment of dower, when dower in kind cannot be allotted, is very well set out in the decision of the Court in *Keith* v. *Trapier,* Bailey's Equity, 66: "The value of one-third of the surplus, and the value cannot be ascertained by any better test than what the property actually brought on sale." Of course, this one-third would be held for life. The rule is to allow *one-sixth absolutely* in lieu of one-third for life. So here the widow would be entitled to receive one-sixth of what was the surplus of the sale, after paying off in full the mortgage held by the Loan and Exchange Bank on the Cedar Grove and the Bell tracts, and she is also entitled to receive one-sixth of the proceeds arising upon the sale of all other lands belonging to estate of her deceased husband, A. W. Geiger, deceased, with interest on such sixth from the 10th January, 1896, but out of whatever sums of money she receives as dower, there must be deducted what the 65 bushels of corn were worth and also the sum of $58.78 for personal property she received.

It is the judgment of this Court, that the decree of Judge Watts be modified as hereinbefore set out, and in all other respects affirmed; and further, that the action be remanded to the Circuit Court for such further proceedings as may be necessary.

MR. JUSTICE *GARY concurs in the result.*