## 12166

### DORN v. STIDHAM

#### (137 S. E., 331)

1. APPEAL AND ERROR—JOINING TWO EXCEPTIONS IN ONE CONSTITUTES VIOLATION OF RULE (SUPREME COURT RULE 5, § 6).—Joining of two exceptions in one constitutes violation of Supreme Court Rule 5, § 6.

2. EXECUTION—LANDS, AT COMMON LAW, WERE NOT LIABLE TO LEVY AND SALE FOR DEBT (CIV. CODE 1922, § 5475).—At common law lands were not liable to levy and sale for debt, liability therefor being created by 5 Geo. 2, c. 7, now Civ. Code 1922, § 5475.

3. COURTS—PROBATE AND COURT OF COMMON PLEAS OF DECEDENT'S RESIDENCE HAVE CONCURRENT JURISDICTION TO ORDER SALE OF LANDS IN AID OF PERSONALTY FOR PAYMENT OF DECEDENT'S DEBTS (CIV. CODE 1922, § 5414).—Under Civ. Code 1922, § 5414, probate Court and Court of common pleas of county in which decedent was last an inhabitant have concurrent jurisdiction to order sale of his lands in aid of personality for payment of his debts.

4. HOMESTEAD—NIECE OF TESTATRIX HELD NOT ENTITLED TO HOMESTEAD EXEMPTION IN LANDS DEVISED AS AGAINST DEBTS OF TESTATRIX.—Niece of testatrix *held* not entitled to homestead exemption

---

NOTE: As to who may be considered as "head of family" within meaning of Homestead Law, see 13 R. C. L., pages 556–564.

As to right of owner of homestead to dispose of it by will, see 13 R. C. L., 646.

in lands devised to her as against debts of testatrix, in view of history of legislation (Acts Dec. 20, 1823 [6 St. at Large, p. 214], Dec. 16, 1857 [12 St. at Large, p. 85], Dec. 21, 1857 [12 St. at Large, p. 672]; Const. 1868, Art. 1, § 20, Art. 2, § 32; Acts Sept. 9, 1868 [14 St. at Large, p. 20], March 1, 1870 [14 St. at Large, p. 380], March 13, 1872 [15 St. at Large, p. 229], Feb. 22, 1873 [15 St. at Large, p. 369], March 3, 1874 [15 St. at Large, p. 589], Dec. 13, 1880 [17 St. at Large, p. 320], Dec. 24, 1880 [17 St. at Large, p. 515]; Civ. Code 1922, § 5493; Const. 1895, Art 3, § 28).

5. HOMESTEAD—"HEAD OF FAMILY," AS USED IN HOMESTEAD LAWS, NEED NOT BE A HUSBAND, OR FATHER, OR OF MASCULINE GENDER.—The "head of the family," as that term is used in homestead laws, need not necessarily be husband, or father, or of the masculine gender.

6. HOMESTEAD—RESIDENT OF STATE ONLY MAY CLAIM EXEMPTION AGAINST DEBTS AND MUST BRING HIMSELF WITHIN DEFINITION OF "HEAD OF FAMILY" AS USED IN HOMESTEAD LAWS.—A resident of State may claim homestead exemption in his or her property as against debts, and when such exemption is claimed, claimant must bring himself or herself within the definition of "head of family" in sense that term is used in homestead laws.

7. HOMESTEAD—RIGHT OF HEAD OF FAMILY TO INTERPOSE CLAIM OF HOMESTEAD EXEMPTION AS AGAINST DEBTS IS TRANSFERRED ON HIS DEATH TO WIDOW OR CHILDREN OR BOTH.—Upon death of a head of a family who owed debts and to whom no homestead had been assigned in his lifetime, right to interpose claim of homestead exemption as against debts of deceased is transferred by homestead laws to widow or children or both.

8. WILLS—TESTATOR'S DIRECTION FOR PAYMENT OF DEBTS TRANSFERRED NO TITLE OR INTEREST THEREIN TO HIS CREDITORS.—A direction by testator in his will that his debts be paid is not a testamentary disposition of his property, and transfers no title or interest therein to his creditors.

9. WILLS—HOMESTEAD LAWS HELD NOT TO AFFECT LAWS GRANTING PERSONS RIGHT TO DISPOSE OF PROPERTY BY WILL (CIV. CODE 1922 § 5335).—Homestead laws *held* not to affect Civ. Code 1922, § 5335, granting right to dispose of title to lands, tenements, or hereditaments by will with certain exceptions, since to hold that widow and children could invoke homestead exemption if testator owed debts would be to deny testator right to dispose of his property at his own free will and pleasure.

10. HOMESTEAD—WOMAN MAY NOT CLAIM HOMESTEAD EXEMPTION IN HER OWN PROPERTY MERELY BECAUSE SHE IS WIDOW.—A woman is not entitled to assert right to homestead exemption in her own property merely because she is a widow.

11. HOMESTEAD—RIGHT TO CLAIM HOMESTEAD IS PERSONAL AND DIES WITH HEAD OF FAMILY UNLESS HE LEAVES WIDOW OR CHILDREN.—

Right to claim homestead is a personal right given by the Constitution to the head of a family residing in this State, and on his death the right dies with him, unless he leaves a widow or children, in which case it continues to them and to no others.

12. HOMESTEAD—WIDOW OF TESTATOR, IF HAVING RIGHT OF HOMESTEAD, COULD NOT DEVISE PROPERTY FREE FROM LIEN OF JUDGMENT AGAINST TESTATOR.—Widow of testator, if having right to claim homestead in property as "head of family," could not devise property so that devisee would take it free from lien of judgments against testator, since will does not take effect until death and homestead right continues to head of family no longer than death.

Before DeVore, J., Edgefield, July, 1925. Affirmed.

Action by J. Whit Dorn, in his own right and as executor of last will and testament of Mrs. P. A. Permenter, deceased, against Alice D. Stidham and others. Decree sustaining a demurrer to the answer, and defendants appeal.

The will of Mrs. P. A. Permenter, the decree of Judge DeVore, the first and fifth grounds of demurrer interposed by plaintiff, and the exceptions of Alice Stidham which were directed to be reported, are as follows:

"WILL OF MRS. P. A. PERMENTER

"State of South Carolina, County of Edgefield.

" Be it known that I, Pauline A. Permenter, of Meeting Street section, being aged but of sound mind and reasonably good health for a woman of my age and with a heart full of sincere gratitude to my most gracious and bountiful Creator, do make this, my last will and testament, hereby revoking any wills or testaments heretofore made by me.

"Item 1. Let all my just debts be paid.

" Item 2. I hereby give, devise and bequeath all my property, both real and personal, unto my beloved niece, Alice Dorn Stidham, for and during the term of her natural life and at death to go to her child or children, share and share alike, if any, provided the said Alice Dorn Stidham continues to live with me and care for me faithfully up to my death, and provided further, that the said Alice Dorn Stidham shall cause to be erected over my grave a neat monument to cost at least two hundred dollars, but if she fails

to do so, that is to say, if she leaves me abandoned and ceases to care for me during my brief stay in this vale of tears, or fails to erect a monument over my grave within one year after my death, then she forfeits all interest in my estate.

" Item 3. In case said Alice Dorn Stidham shall die leaving no child or children and is survived by her husband, Arthur Stidham, or any other husband she may at the time have, then the property to the extent of the same shall go to said Arthur  Stidham or other husband, up to the day the said Arthur Stidham shall marry again, and on that day he is to forfeit all interest in same, or if he does not marry, he, the said Arthur Stidham, shall enjoy a life estate in the same or rather, shall have the use and occupation of the same and get the rents and profits for his support for and during his life only, in case he remains single, and in case the said Alice Dorn Stidham shall die without leaving any child or children, so that Arthur Stidham shall have a home and support so long as he remains single, or till his death if he remains single, but no longer.

" Item 4. In case my niece, Alice Dorn Stidham, shall die leaving no child or children, then the property to go to Arthur Stidham so long as he remains single, but not a day longer, or till his death, if he should not marry again, then at his death or on the day the said Arthur Stidham shall marry again, then one-half of my property so left shall go to the trustees of McKendree Methodist Church, its successors and assigns forever in fee simple, and the other half to go to my then living brothers and sisters, half or moiety thereof going to my living brothers and sisters in fee simple.

" Item 5. In providing that the property go to my dear niece, Alice Dorn Stidham, for life and at her death to go to her child or children that she may leave, I mean to go to said child or children in fee simple absolute.

" Item 6. I do hereby appoint my two beloved brothers, George Dorn and Whit Dorn, as executors of this, my last

will and testament, or either of them as may qualify. Erasures and changes as to my brothers and sisters made before signing, as I want my brothers and sisters who outlive me to get it as provided, if my dear niece, Alice Dorn Stidham, dies without child or children, when Arthur Stidham dies or marries, as to half and other half to go to McKendree church. Witness my hand and seal, 9 November, 1918.

"(Signed) P. A. Permenter.

" Lela A. Griffin.

"E. J. Mims.

" A. S. Tompkins."

### Grounds of Demurrer

"(1) That said answers upon their face show that under the Constitution and statute laws of this state the said defendants, Alice D. Stidham and Arthur Stidham, cannot claim the benefit of a homestead exemption in the lands of the testatrix, Mrs. P. A. Permenter, deceased, against the debts of the said Mrs. P. A. Permenter, deceased, as the said defendants, Alice D. Stidham and Arthur Stidham, are neither of them the husband, nor wife, nor the child of the said testatrix, Mrs. P. A. Permenter, deceased."

"(5) That said defendants' amended answers on their face, do not show that the said defendant Alice D. Stidham, or Arthur Stidham, claim a homestead in the property of Mrs. P. A. Permenter, deceased, as her husband, or wife, or child, and as against the debts of the said Mrs. P. A. Permenter, deceased, but, on the contrary, the answers of the defendant Alice D. Stidham, and Arthur Stidham, on their faces show that they claim a homestead in the devised property solely upon the ground that she herself, Alice D. Stidham or possibly Arthur Stidham, being the head of a family, is as much entitled to a homestead in the devised property as against the debts of Mrs. P. A. Permenter, deceased, which it is respectfully submitted neither of them can do under the facts of this case."

### DECREE OF JUDGE DEVORE

" This action was brought by the plaintiff as executor of the last will and testament of Mrs. P. A. Permenter, deceased (hereinafter called the testatrix) and in her own right to sell lands of testatrix in aid of personalty and to pay her debts, which she, the testatrix, directs to be paid under the terms of her will. The plaintiff sues in his own right because he is one of the remote residuary devisees under said will. All the devisees, both immediate and remote, and all the heirs at law of testatrix, are made parties to the action. The defendant Alice D. Stidham, the wife of the defendant Arthur Stidham, is a niece of testatrix and is one of the principal devisees under said will, and she sets up in her answer the claim of homestead in the lands of testatrix as against the debts of testatrix.

"The State Constitution of 1895, Art. 3, § 28, provides for the homestead for the head of a family, which homestead shall be exempt from the debts of the debtor; the first Code of 1922, Vol. 3, p. 1670, § 5493, is as follows: ' If the husband be dead, the widow and children; if the father and mother be dead, the children living on the homestead. whether any or all such children be minors or not, shall be entitled to have the family homestead exempted in like manner as if the husband or parent were living,' etc.

" See *National Bank v. Senn*, 25 S. C., 581, in which the Court says: ' Here none of the claimants are the debtors. Although they are claiming exemption in their father's land and as against his debts, they yet claim "independently," each for himself. This, in our judgment, they cannot do, If they are entitled to homestead, it is as their father's family, to whom his right was transmitted, and not as the independent heads of their own families respectively.'

" The family history here shows and the record before me also shows claimant is the neice of testatrix; that she is a member of Arthur Stidham's family and not of the testatrix who is her aunt, and as the said Mrs. Alice D. Stid-

ham does not come within either of the classes mentioned in the Constitution or statute, as a matter of law she cannot claim homestead in this case in said lands as against the debts of testatrix, and the demurrer of the plaintiff to her answer setting up homestead is hereby sustained.

"The facts in the case of *Spigener v. Crews,* 111 S. C., 281; 97 S. E., 838, cited by the defendant's attorney are different from the facts in this case, and the decision in that case is not applicable here.

" The case of *Ex Parte Cothran,* 128 S. C., 122; 121 S. E., 556, relied upon by the claimant here, is also grounded upon an entirely different state of facts. In the *Cothran case* the widow and children were the claimants and of course they are within the express terms of the law giving homestead, but this case furnishes no authority to the claimants' contention in the within case, and this applies to all the authorities cited by defendant's counsel.

"It is therefore ordered, adjudged, and decreed: That the first and fifth grounds of demurrer interposed by the plaintiff to the amended answer of the defendants, Alice D. Stidham and Arthur Stidham, are hereby sustained. All other questions raised by the demurrer are not passed on, but shall remain open without prejudice to the plaintiff's rights."

### Exceptions of Alice Stidham

"To E. H. Folk, Esq., attorney for the respondent: Pursuant to the notice heretofore served, the defendants' appeal to the Supreme Court from the decree and rulings of the Circuit Judge filed in the above-stated case, the 21st day of July, 1925, on the following grounds, to wit: (1) That the Circuit Judge erred in sustaining the first and fifth grounds of the plaintiff's demurrer; and erred in his ruling that the defendant Alice D. Stidham could claim no interest in said property, under the homestead law against the debts of the testatrix and could claim no interest in said property under the homestead law of this state because she is a member of Arthur Stidham's family and not the testatrix's; when he

should have ruled that under the constitutional and statutory provision Mrs. P. A. Permenter, having made no conveyance of her property by deed or mortgage, was up to the time of her death entitled to assert the right of homestead, and that at her death that right immediately vested unimpaired in her devisees Mrs. Alice D. Stidham and her children, who succeed to the title under the terms of the will, free of all liens and incumbrances, up to the amount of the value of the homestead exemption of Mrs. P. A. Permenter in said property, and that a direction in the will of testatrix, that her debts be paid, is not a waiver of said homestead.

" M. P. Wells, appellant's attorney."

*Mr. M. P. Wells,* for appellant, cites: *Homestead Exemption under Const.* 1895 *same as right conferred by prior law:* 128 S. C., 129. *Purpose law to secure right of exemption:* 19 S. C., 242. *Not alter Statute of Distribution:* 20 S. C., 248. *Same person having property to dispose of by will:* 73 S. C., 325; 92 S. C., 135; Ann. Cas., 1914-B, 267. *Not affect Statute of Wills, Sec.* 1987, *Rev. Stat.,* 1893: 56 S. C., 186. *Life estate subject of homestead:* 54 S. C., 579.

*Mr. Edwin H. Folk,* for respondent cites: *Niece not entitled to homestead exemption:* Const., 1895, Sec. 28; Code 1922, Vol. 3, p. 1670; 51 S. C., 101.

March 3, 1927.

The opinion of the Court was delivered by MR. JUSTICE BLEASE.

The facts giving rise to the questions presented here for our determination are as follows: Mrs. P. A. Permenter, " a childless widow," died on the —— day of April, 1924, leaving of force her last will and testament bearing date November 9, 1928, which was duly admitted to probate in common form in the probate Court for Edgefield county, on the 24th day of April, 1924. J. Whit Dorn, the plaintiff in this action, was named in said will as one of the execu-

tors thereof, and duly qualified as such. Some time thereafter, an action was instituted by said J. Whit Dorn, individually, and as executor of the last will and testament of Mrs. P. A. Permenter, deceased, having for its object the sale of a portion of the land belonging to testatrix in aid of personalty in payment of debts. He sued in his own right because he is one of the remote residuary devisees under said will. All the devisees, both immediate and remote, and all the heirs at law of testatrix, were made parties to the action. To that action no answer was filed by any of the defendants, and no objection made to said sale. The proceeds arising from said sale being insufficient to discharge the debts against said estate, this action was instituted between the same parties, having for its object the sale of another portion of the lands of testatrix to aid in the payment of the remaining unpaid debts, and to erect a tombstone over the grave of testatrix. The lands sold in the prior action, and that which it is sought to sell in this action, were devised in item 2 of said will, which said instrument will be reported.

Alice Dorn Stidham, a niece of testatrix, and principal devisee under said will, filed her answer in this action, interposing various defenses, and setting up a claim to homestead exemption in the lands so devised to her as against the debts of the testatrix. The plaintiff demurred to so much of said answer as set up homestead exemption on the following grounds: (1) Because said claimant, being only a niece of testatrix, could not, under the Constitution and statutes of this state, claim homestead exemption in her aunt's property, for the reason that she did not come within the class of persons who could claim homestead, to wit, husband, widow, child; and (2) because of the condition precedent upon the performance of which the said Alice Dorn Stidham was to get the property devised, to wit, by erecting a monument over the grave of the testatrix in one year after her death, had not been performed and the said year had elapsed. The demurrer was heard by his Honor, Judge DeVore, who

sustained the same on the first ground, leaving open the second ground. His decree will be reported.

The first and fifth grounds of demurrer interposed by plaintiff, referred to in the order of Judge DeVore, will be reported.

From the order of Judge DeVore, the defendant Alice Dorn Stidham appeals to this Court upon exceptions, which will be incorporated in the report of the case.

It will be seen that the exceptions are two in fact, though both are joined in one, which is in violation of rule 5, § 6, of this Court. The first of said exceptions imputes error to the Circuit Judge in sustaining the first and fifth grounds of plaintiff's demurrer, and thereby holding that appellant was not entitled, as a matter of law, to claim homestead exemption in the property devised to her and her children as against the debts of testatrix, while the second exception imputes error to the Circuit Judge in not holding that testatrix was up to the time of her death entitled to assert the right to homestead exemption in her property, and that at her death that right immediately vested unimpaired in her devisees, who succeeded to the title to said property under the terms of the will, free of all liens and incumbrances, up to the value of the homestead exemption which testatrix had in said property up to the time of her death.

We will consider these exceptions in the above order.

The appellant is a niece and devisee of testatrix, Mrs. P. A. Permenter, and the first question presented by the exceptions, for our determination is whether she is entitled to claim homestead exemption in the property devised to her against the debts of her testatrix.

At common law lands were not liable to levy and sale for debt. *Norton v. Bradham,* 21 S. C., 381.

They were made liable by the statute of 5 Geo. 2, ch. 7, which was enacted in this state in 1712 (2 St., 571), now

incorporated in Section 5475, Vol. 3, Code of 1922, as follows :

"Houses, lands, and other hereditaments and real estates, situated or being within this state, belonging to any person indebted, shall be liable to and chargeable with all just debts, duties and demands, of what nature or kind soever, owing by any such person, and shall and may be assets for the satisfaction thereof, and shall be subject to the like remedies, proceedings, and process, as personal estates."

Such lands are general assets for the payment of debts, and may be sold in aid of personalty for the payment of debts of a decedent; the probate Court and the Court of Common Pleas of the county in which decedent was last an inhabitant having a concurrent jurisdiction to order the sale thereof. Section 5414, Code 1922. *McNamee v. Waterbury,* 4 S. C., 163. *Scruggs v. Foot,* 19 S. C., 277. *Thomas v. Poole,* 19 S. C., 327. *Suber v. Allen,* 13 S. C., 317. *Jordan v. Moses,* 10 S. C., 431. *Shaw v. Barksdale,* 25 S. C., 211. *Dyson v. Jones,* 65 S. C., 308; 43 S. E., 667. *Brock v. Kirkpatrick,* 60 S. C., 322; 38 S. E., 799; 85 Am. St. Rep., 847. *Witte Bros. v. Clark,* 17 S. C., 323. *Epperson v. Jackson,* 83 S. C., 157; 65 S. E., 217. *Hand v. Kelly,* 102 S. C., 151; 86 S. E., 382.

It is manifest, therefore, that the lands devised to appellant are liable for the payment of the debts of testatrix, unless the devisee is entitled to homestead exemption therein as against the debts of testatrix. The Circuit Judge held that she was not entitled to such exemption, for the reason that she does "not come within either of the classes mentioned in the Constitution or statute." In so holding did he commit error of law?

In 29 C. J., at page 783, it is said:

"The homestead interest depends entirely on organic or statutory provisions, nothing like it being known at common law; and there can of course be no greater right in the homestead property than is created by these provisions. Be-

cause of the difference in the wording of the homestead laws in the various jurisdictions, the interest created thereby differs widely."

We must look, then, to the organic and statutory provisions in this state relative to the homestead exemption, and the decisions in this jurisdiction construing the same, as our guide in reaching a conclusion.

Without any attempt to make an exhaustive review of the legislation, organic and statuory, in this state upon the question of homestead, we make the following brief review of so much thereof as will the better enable us to understand and decide the question here presented:

In 1823 an Act (6 St., 214) was passed in this state exempting to the head of each family, from levy and sale for debt, certain designated articles of household goods, etc. In 1851 this exemption was extended by Act (12 St., 85) to " the dwelling house, and houses appurtenant thereto, together with fifty acres of land," and other designated personal property. This act was repealed in 1857 (12 St., 672). Section 20, Art. 1, of the Constitution of 1868 provided that " a reasonable amount of property, as a homestead, shall be exempted from seizure or sale for the payment of any debts or liabilities, except for the payment of such obligations as are provided for in this Constitution." Section 32 of Article 2 provided that, " The family homestead of the head of each family, residing in this state such homestead consisting of dwelling house, outbuilding and lands appurtenant, not to exceed the value of one thousand dollars, and yearly product thereof, shall be exempt from attachment, levy, or sale or on any mesne or final process issued from any Court," and " to secure the full enjoyment of said homestead exemption to the person entitled thereto," certain enumerated articles of personal property not to exceed in the aggregate the sum of five hundred dollars were exempted in like manner, and further provided that the General Assembly should at its first ses-

sion " enforce the provisions of this section by suitable legislation."

Pursuant to this constitutional mandate, the General Assembly at its first session, in 1868, passed an Act (14 St., 20) enforcing the provisions of the Constitution, and in its interpertation of its provisions, provided in Section 4 that " the estate or right of homestead of the head of any family, existing at his death, shall continue for the benefit of his widow and minor children, and be held and enjoyed by them until the youngest child is twenty-one years of age, and until the marriage or death of the widow, and be limited to that period." The Act of 1870 (14 St., 380) extended the exemption in personal property provided in and by the Constitution to the head of each family whether such person " owns a homestead of real estate or not." These provision were substantially re-enacted in 1872 (15 St., 229), except as to the duration of homestead, and as to that it provided " that the homestead, when assigned as herein prescribed, shall vest in the heads of the family in fee simple, and be freed and discharged from all debts and liabilities whatever, so long as he or she shall remain resident of this state, and no longer."

The Act of 1873 (15 St., 369) re-enacted provisions exempting to the head of each family the family homestead and personal property subject to exemption under the Constitution, and provided that—

" The title to the homestead so set off and assigned, shall be forever discharged from all debts of said debtor then existing or thereafter contracted."

And in Section 4 provided as follows:

" If the husband be dead, the widow and children, if the father and mother be dead, the children living on the homestead, whether any or all such children be minors or not, shall be entitled to have the family homestead exempted in like manner as if the husband or parents were living; and the homestead so exempted shall be subject to partition

among all the children of the head of the family in like manner as if no debts existed, provided, that no partition or sale in that case shall be made until the youngest child becomes of age, unless, upon proof satisfactory to the Court hearing the case, such sale is deemed best for the interest of such minor or minors."

By Act of 1874 (15 St., 589) the Act of 1873 (erroneously referred to in said Act as 1872) was amended by adding the following as Section 12:

" And in case any woman having a separate estate shall be married to the head of a family who has not, of his own, sufficient property to constitute a homestead as hereinabove provided, the said married woman shall be entitled to all of the provisions and benefits of this Act, so as to exempt all the property hereinabove allowed as a homestead exemption from attachment, levy and sale under any execution against her for debts of her own contracting; and in case of the death of any married woman entitled to homestead as above provided, the minor children of such woman shall be entitled to the right of homestead in the same manner and to the same extent as now provided by law for the minor children of any deceased head of a family: Provided, that nothing herein contained shall be construed so as to allow any one family a greater amount of property in the aggregate than is allowed in Sections 1 and 2 of the Act herein amended to the head of any family."

On December 13, 1880 (17 St., 320) Section 32 of Article 2 of the Constitution of 1868 was amended to read as follows:

" The General Assembly shall enact such laws as will exempt from attachment and sale under mesne or final process issued from any Court to the head of any family residing in this state a homestead in lands, whether held in fee or any lesser estate, not to exceed in value one thousand dollars, with the yearly products thereof; and every head of a family residing in this state, whether entitled to a home-

stead exemption in lands or not, personal property not to exceed in value the sum of five hundred dollars: Provided, that in case any woman having a separate estate shall be married to the head of a family who has not of his own sufficient property to constitute a homestead as hereinbefore provided, said married woman shall be entitled to a like exemption as provided for the head of a family: Provided, further, that there shall not be an allowance for more than one thousand dollars worth of real estate and more than five hundred dollars worth of personal property to the husband and wife jointly: Provided, that no property shall be exempt from attachment, levy or sale for taxes, or for payment of obligations contracted for the purchase of said homestead or the erection of improvements thereon: Provided further, that the yearly products of said homestead shall not be exempt from attachment, levy or sale, for the payment of obligations contracted in the production of the same. It shall be the duty of the General Assembly at their first session to enforce the provisions of this section by suitable legislation."

The Act of 1880 (17 St., 515) carried out the provisions of said constitutional amendment. Section 4 of this Act is the same as Section 4 of the Act of 1873 (15 St., 369), above quoted, and has remained unchanged and now appears as Section 5493, in the Code of 1922.

The Constitution of 1895, Art. 3, § 28, substantially reenacts the provisions of the constitutional amendment of 1880, and provides further:

" The title to the homestead to be set off and assigned shall be absolute and be forever discharged from all debts of the said debtor then existing or thereafter contracted except as hereinafter provided," and further, " That no waiver shall defeat the right of homestead before assignment except it be by deed of conveyance, or by mortgage, and only as against the mortgage debt; and no judgment creditor or other creditor whose lien does not bind the homestead

shall have any right or equity to require that a lien which embraces the homestead and other property shall first exhaust the homestead: Provided, further that after a homestead in lands has been set off and recorded the same shall not be waived by deed of conveyance, mortgage or otherwise, unless the same be executed by both husband and wife, if both be living."

In 1896 (22 St., 190), the General Assembly enacted appropriate legislation, amending the Revised Statutes so as to conform to the changes made by the Constitution of 1895.

Thus, in brief, is the history of the legislation in this state relating to the exemption to the head of a family of a homestead in land and personal property, of the duration of such homestead when assigned, and of the succession to the right of homestead upon the death of the head of the family.

We turn now to the decision of this Court construing the same.

Under the Constitution of 1868, it was " the family homestead, * * * such homestead consisting of dwelling house," etc.; whereas the language of the amendment of 1880 and the Constitution of 1895 is " a homestead in lands." Since said amendment, therefore, the head of a family is entitled to homestead in any land he may own, whether he resides on it or not. *Swandale v. Swandale,* 25 S. C., 389. *Nance v. Hill,* 26 S. C., 227; 1 S. E., 897.

Under the Constitution of 1868, only the articles of personal property therein enumerated could be exempted, and the General Assembly had no authority to extend the exemption to other personal property. *Duncan v. Barnett,* 11 S. C., 333; 32 Am. Rep., 476. *Pelzer, Rodgers & Co. v. Campbell & Co.,* 15 S. C., 594; 40 Am. Rep., 705. *Union Bank v. Northrop,* 19 S. C., 476. The amendment of 1880 permitted the exemption in any personal, as well as any real, property. So did the Constitution of 1895.

It is thus seen that the constitutional and statutory provisions relating to homestead all look to the protection of the family; the head of a family being entitled to the exemption, not for his own but for the benefit of his family. *In re Kennedy,* 2 S. C., 216. *Ex parte Strobel,* 2 S. C., 311. *Bradley v. Rodelsperger,* 3 S. C., 277. *Garaty v. Du Bose,* 5 S. C., 500. *Moore v. Parker,* 13 S. C., 490. *Norton v. Bradham,* 21 S. C., 381.

If homestead be not set off to the head of the family during his lifetime, upon his death the right thereto is transferred, by the Constitution and statutes passed in pursuance of its authority, to the widow and children, or to the widow alone if there be no children, or to the children if there be no widow. See authorities above cited, and also *Yoe v. Hanvey,* 25 S. C., 97. *Hendrix v. Seaborn,* 25 S. C., 485; 60 Am. Rep., 520. *Broughton v. Broughton,* 93 S. C., 26; 75 S. E., 1027. *Ex parte Worley,* 49 S. C., 41; 26 S. E., 949; Id., 54 S. C., 208, 32 S. E., 307; 71 Am. St. Rep., 783. *Geiger v. Geiger,* 57 S. C., 521; 35 S. E., 1031.

"The head of the family," as that term is used in the homestead laws, need not necessarily be a husband, or father, or of the masculine gender. *Garaty v. Du Bose,* 5 S. C., 493. *Myers v. Ham,* 20 S. C., 522. *Rollings v. Evans,* 23 S. C., 316. *Scott v. Mosely,* 54 S. C., 375; 32 S. E., 450. *Wagener v. Parrott,* 51 S. C., 489; 29 S. E., 240; 64 Am. St. Rep., 695. *Chamberlain v. Brown,* 33 S. C., 598; 11 S. E., 439. *Fant v. Gist,* 36 S. C., 576; 15 S. E., 721.

It is clear from the foregoing authorities that only a resident of this state may claim homestead exemption in his or her property, as against his or her debts, and that when such exemption is claimed, the claimant must bring himself or herself within the definition of the " head of a family " in the sense that term is used in the homestead laws.

It is equally clear, we think, that upon the death of "a head of a family," who owes debts, and to whom no homestead has been assigned in his or her lifetime, the right to interpose the claim of homestead exemption as against the debts of such deceased "head of the family" is transferred by the homestead laws to the widow or children, or both.

In *Elliot v. Mackorell,* 19 S. C., at page 242, this Court said, in construing the homestead law:

"The purpose then was not to create any new estate, or to invest estates already existing with any new qualities, or to subject them to any restrictions, but to secure a right of exemption by forbidding the use of the process of the Court.

To the same effect, see *Ex parte Ray,* 20 S. C., 246. to sell certain property for the payment of debts."

To the same effect, see *Ex parte Ray,* 20 S. C., 246. *Chalmers v. Turnipseed,* 21 S. C., 126. *Yoe v. Hanvey,* 25 S. C., 94. *Beaty v. Richardson,* 56 S. C., 186; 34 S. E., 73; 46 L. R. A., 517. *Sloan v. Hunter,* 65 S. C., 241; 43 S. E., 788. *Davis v. Milady,* 92 S. C., 145; 75 S. E., 363; Ann. Cas., 1914-B, 267.

In *Ex parte Ray, supra,* this Court said:

"We do not understand the homestead laws as designed to alter or in any way affect the statute for distribution of intestate's estates, and they do not even purport so to do."

In *Yoe v. Hanvey,* 25 S. C., 94, which arose under Section 4 of the Act of 1873, above quoted, this Court, acting upon what we think was the erroneous theory that, upon the death of the husband intestate, the homestead, when set off to the widow and children of intestate, belonged to the widow as the head of the family, and could not be partitioned between her and such children during the widow's life. In *Ex parte Worley,* 54 S. C., 208; 32 S. E., 307; 71 Am. St. Rep., 783, it was held that the homestead, when so set off, belonged to, and was subject to partition between,

the widow and children, even though a child be married and himself the head of a family and living on his own lands, thus overruling *Yoe v. Hanvey, supra.* And in *Saunders v. Strobel,* 64 S. C., 489; 42 S. E., 429, it was held that such partition must be made between the widow and the children of deceased brothers and sisters of her deceased husband (he having left no children). In *Ex parte Brown,* 37 S. C., 187; 15 S. E., 926, it was held that the widow and children were entitled to the homestead exemption though they had separate estates of their own. In *Glover v. Glover,* 45 S. C., 51; 22 S. E., 739, it was held that if the widow takes dower in the lands of her deceased husband, she is not entitled to share in the partition of the homestead set off to her and the children. See *Geiger v. Geiger,* 57 S. C., 521; 35 S. E., 1031, to the same effect. See, also, *Stewart v. Blalock,* 45 S. C., 61; 22 S. E., 774.

From these authorities, it is clear that, if the head of the family does not in his lifetime claim the homestead exemption, upon his death, intestate, only his " widow and children " may claim the exemption, but that after the homestead is set off and freed from the debts of such intestate, it is subject to the statute of distribution just as if testate had left no debts; the right of partition of such homestead being, by the homestead law, postponed during the minority of the children of intestate. The homestead law in no other way changes or affects the law of descent and the right to partition. Consequently, we may state that, when the head of a family dies intestate, owing debts and owning property, the statute of distribution transfers the interest in such property to the distributees in the same manner as if no debts existed. If such distributees come within the class of " widow and children," the homestead laws transfer to them the right to invoke the homestead exemption in such property so transferred to them by the statute of distribution, as against the debts of such intestate. But if such distributees do not come within the favored

class, " the charmed circle," they may not invoke the homestead exemption, for the reason that the homestead law gives to them no right to do so.

We come now to the law of wills. What effect, if any, does the homestead law have upon the right to dispose of one's property?

It has been repeatedly held by this Court that a direction by testator in his will that his debts be paid is not a testamentary disposition of his property, and transfers no title or interest therein to his creditors. *Hendrix v. Seaborn,* 25 S. C., 481; 60 Am. St. Rep., 520. *Bostick v. Chovin,* 55 S. C., 427; 33 S. E., 508. *Beaty v. Richardson,* 56 S. C., 173; 34 S. E., 73; 46 L. R. A.; 517. *Smith v. Moore,* 109 S. C., 196; 95 S. E., 351. *Ex parte Cothran,* 128 S. C., 129; 121 S. E., 556. If the claimant herein is entitled to homestead exemption, then such right is not defeated by the direction in the will of testatrix that her debts be first paid.

Section 5335 of the Code of 1922 is, in part, as follows:

" Any person having the right or title to any lands, tenements or hereditaments whatsoever (persons of unsound mind and infants excepted), may dispose thereof by will, in writing, at his or her own free will and pleasure, except as hereinafter provided."

In *Beaty v. Richardson, supra,* after referring to *Elliott v. Mackorell,* and *Ex parte Ray, supra,* it was said:

"Now if the homestead laws create no new estates, and do not invest those already existing with any new qualities, or ' subject them to any restrictions,' and do not ' in any way affect the statute for the distribution of intestate's estate,' why should they be held to affect in any way the statute of wills, by which it is declared (Section 1987, of Rev. Stat. of 1893) that any person, having right or title to any property, ' may dispose thereof by will, in writing, at his or her own free will and pleasure, except as herein pro-

vided'; and there is no provision therein forbidding any interference with the right of homestead."

It is unnecessary to cite any of the numerous cases decided by this Court holding that, with certain well-known exceptions (with which we are not here concerned), the owner of property may dispose thereof by will in any way his partialities, or pride, or caprice, may prompt.

If, then, the homestead laws do not affect in any way the statute of wills, and the owner of property may (with certain exceptions) dispose thereof in any way his partialities, or pride, or caprice, may dictate, it must necessarily follow that the head of the family may dispose of his property to persons other than the members of his family. If he does, manifestly, the widow and children could not invoke the homestead exemption, if testator owed debts, and thereby have a homestead set off to them in property not devised or bequeathed to them but to others. To so hold would be to deny to the testator the right to dispose of his property at his own free will and pleasure, and to make a will for him, which this Court is wholly without power to do. In *Elliott v. Mackorell, supra,* this Court said:

"Indeed it would be altogether beyond the competency of the Legislature to divest one man of his estate and vest it in another, even though such other might be his wife or child."

In *Ex parte Cothran, supra,* Mr. Justice Marion, speaking for the Court, said:

"Obviously, therefore, the homestead law may not be invoked to change the succession to the title of property. It is merely a right conferred upon certain persons to have a homestead of a certain value in property exempted from the reach of a certain class of the property owner's creditors. It is therefore a right which may only be asserted and enforced against creditors by a favored class of property owners, viz., the heads of families, etc.,

and the designated class of persons who have succeeded to the title of such property owners under the laws governing the distribution of intestates' estates or the succession to property by will."

The devisees under the will in that case were the widow and children, to whom the statute extended the right to claim homestead.

If the homestead laws create no new estates, nor invest estates already existing with any new qualities, nor subject them to any restrictions, it follows that they confer no property rights upon some or take away property rights from others. Indeed, they merely confer a right to have certain property exempted from the grasp of creditors. This right is given by the Constitution to the head of a family, and if he fails to avail himself of it during his life, at his death the same right is continued by statute to his widow and children, and to no others. If the head of a family owes debts, but owns no property, manifestly the homestead laws give him no property in which the exemption may be claimed. He is merely given the right to claim the exemption in such property as he has. To use the language of Mr. Chief Justice Simpson, in *Chalmers v. Turnipseed,* 21 S. C., 136:

"In other words, a certain portion of the property of the head of the family, as it already exists, so far as the estate therein is concerned, is set aside and walled in, so to speak, as a homestead against invasion by process from any Court. This is certainly the extent of the constitutional provision on the subject."

The Constitution thus may be said to throw a wall around a certain amount of property belonging to the head of the family, to lock the gate and turn the key over to him. If he desires to open the gate, by deed or mortgage, and let his creditors in, and they consume the same, then his property is gone in which the right could have been asserted. If, however, he does not so waive the substance, he may assert

the right to exemption therein, and upon his death intestate. the substance, or property in which the exemption might be claimed, is transferred by the laws of descent to his widow and children, to whom the homestead laws extend or continue the right which the head of the family had at the time of his death, and they may assert the same in such property. But if the head of the family dies intestate, owing debts, but owning no property which may pass under the statute of distributions to his widow and children, manifestly there would be no property in which they could claim the exemption. Likewise, if he dies testate, owing debts, and owning property, but disposes of such property by will to persons other than his widow and children, it is equally clear that they would have no property in which to claim the exemption. In both instances the widow and children would have the right, under the homestead laws, to assert the claim to exemption as against the debts of deceased debtor, but in neither case would there be any property in which the exemption could be had. On the other hand, the debtor might be the head of a family at the time of his death, intestate, but he might leave no widow or children, and his property pass by the statute of distributions to his distributees provided by statute in such case. Such distributees would have the property in which the exemption might be had, but not being within the class of "widow" or "child" would not have the right under the homestead laws to claim the exemption. Likewise, if the debtor disposes of his property to persons other than to his widow and children, such devisees and legatees would have the property in which the exemption could be had, but would not have the right to claim the exemption. It is manifest, then, that to enable one successfully to assert the claim to homestead exemption, it is necessary that he had both the property in which the exemption may be had and the right to claim the exemption. In other words, the property right, whether acquired by descent or by will, and the homestead right, must coincide in

the claimant—the head of the family, or his widow and children, or widow or children.

We know of no case, none has been cited, and we think none can be found, in this state where any person other than the head of a family, or the widow and children, or widow or children, of the head of a family, has or have been allowed to assert the claim to homestead exemption. The claimant herein, Mrs. Stidham, being a niece of the deceased debtor, may not, as such niece, assert homestead exemption in property devised to her as against the debts of testatrix. This seems, indeed, to be conceded by her, for in appellant's brief is the following statement:

"The Circuit Judge decided this case upon an erroneous premise, to wit, that because claimant is the niece of testatrix, and not a member of her family but a member of Arthur Stidham's family, she does not come within either of the classes mentioned in the Constitution or statutes, and as a matter of law she cannot claim homestead. Now we do not claim as the head of the family: we claim as the devisee of the head of the family. We never have anywhere in our answer claimed that Alice D. Stidham and Arthur Stidham are either of them the husband, wife, or the child of Mrs. P. A. Permenter. We claim to have succeeded to the title of Mrs. P. A. Permenter under her will. Mrs. P. A. Permenter, a widow entitled to the homestead, exempt from her debts, had a right to convey the same title that she had by deed or by will. If it was free of lien when she owned it, how could a conveyance from her create a lien in the hands of the grantee or devisee?"

It is manifest, from what we have already said, that Mrs. Stidham cannot claim homestead exemption in the property devised to her as against the debts of testatrix on the ground that she is a devisee.

We come next to examine the second exception, on which appellant seems in the final heat, wholly to rely.

This exception is supported by the following excerpt from appellant's argument here, to wit:

" If Mrs. P. A. Permenter, the widow, was entitled to the homestead, and could convey it exempt of liens by deed, though not assigned, to a party no kin to her, as was done by Mrs. Kearse to Mrs. Miley, in the case of *Ex parte Miley*, 73 S. C., 325; 53 S. E., 535, why could not she convey the same by will?"

From the case cited, we learn that the facts therein were as follows: Mrs. Kearse and her husband were married in 1890; Mrs. Kearse owned a small lot with dwelling thereon in Aiken county, which was the only land owned by her, from the time of her marriage until December 26, 1901; that during said period her husband owned no land at all; on November 22, 1897, Mrs. Warneke obtained judgment against Mrs. Kearse and her husband in the Court of Common Pleas for Aiken county; that on December 26, 1901, Mrs. Kearse conveyed said land to Mrs. Miley for the sum of $750; that at the time of said conveyance the value of said land did not exceed the sum of $750; that thereafter the judgment creditor sought to have the said land levied on and sold under said judgment, and Mrs. Miley filed her petition to enjoin the said judgment creditor and the sheriff from selling said land, and they were enjoined, and restrained by the Circuit Judge from proceeding further with the sale until the further order of the Court—the Circuit Judge holding that, as a matter of law, said land " not being worth more than $1,000, and the defendants owning no other property during said period, the same was exempt from the judgment lien herein as their homestead."

The question before this Court, then, was not a question of the right on the part of Mrs. Miley to assert a claim to homestead exemption in the property conveyed to her by Mrs. Kearse, as against the debts of or judgment against Mrs. Kearse. It is true that Mrs. Kearse, at the time of the conveyance, had a right to claim homestead exemption there-

in as against said judgment, her husband having no real estate. The question before this Court was whether Mrs. Miley took the land so conveyed to her free from the lien of said judgment. It was held that she did on authority of *Cantrell v. Fowler,* 24 S. C., 428. *Wood v. Timmerman,* 29 S. C., 178; 7 S. E., 74. *Ketchin v. McCarley,* 26 S. C., 1; 11 S. E., 1099; 4 Am. St. Rep., 674.

An examination of those cases will show that the decisions therein reached were based upon the following reasoning: Under the Constitution and statutes passed pursuant to its mandate, a homestead in lands, whether held in fee or any lesser estate, not to exceed in value the sum of $1,000, is expressly exempt to the head of every family residing in this state from attachment, levy, and sale, etc.; that originally judgments were not liens upon land, but were made so by legislative enactment of 1873 (15 St., 498), but which said act expressly provided that it should "not be so construed as to make final judgments in any case a lien on the real property of the judgment debtor exempt from attachment, levy and sale under the Constitution"; that where a person entitled to assert the claim to homestead exemption, at the time a judgment was obtained against him, owned land the actual value of which was not more than $1,000, such land, whether set off or assigned as homestead or not, was his homestead, and as such was free from the lien of any judgment of active energy against him, and that he could convey the same, and the grantee would take it free from the lien of such judgment, provided such owner owned no other land during the period from the date of such judgment until the date of such conveyance and was during said period and at the time of such conveyance entitled to assert homestead exemption therein. The said proviso of the Act of 1873 appears as paragraph 4, § 610, Vol. 1, Code of 1922.

We gather, then, from the language above quoted from appellant's argument, and the line of authorities cited in

support thereof, that the question which it is desired that this Court pass upon is this: May the owner of land, who is entitled to assert homestead exemption therein, and who could by a deed of conveyance convey said land to a grantee who would take the same free from the lien of a judgment against the owner, devise the said land and the devisee take the same free from the lien of said judgment?

It will be observed that this exception, and the argument in support thereof, is predicated upon the assumption that Mrs. Permenter was the head of a family, and therefore entitled to assert homestead exemption in her property as against her debts. There is in the record nothing indicating that she was the head of a family. Appellant, in her answer, claims that long years ago, Mrs. Permeter agreed with her that if she would take care of Mrs. Permenter that she (Mrs. Permenter) would "will" to her the property and that she (the appellant) carried out said agreement, etc. From this, and other facts appearing in the record, it would seem that Mrs. Permenter in a way became a member of the Stidham family, and was not herself the head of a family. But be that as it may, it is certain that she was not the head of a family merely because she was a widow. A woman is not entitled to assert the right to homestead exemption in her property merely because she is a widow. Indeed, if a man dies, owing debts and owning property, and such property passes, by will or descent, to his widow, she may then claim homestead exemption therein, on the ground that she is the widow, and against the debts of her deceased husband. But she may not claim homestead exemption in her own property, as against her own debts while unmarried, unless she can bring herself within the constitutional definition of the head of a family; or while married, unless her husband has not of his own sufficient property to constitute the homestead. It is difficult, then, to see just how the Circuit Judge could have held as a matter of law that Mrs. Permenter was the head

of a family, and therefore had the right to claim homestead exemption in her property as against her debts.  But waiving this objection, and assuming for the present that she was the head of a family, and therefore entitled to assert the homestead exemption up to the time of her death; it is not clear how she could devise or bequeath that right to appellant.  The right to claim homestead is a personal right, in the first instance given by the Constitution to the head of a family residing in this state.  At his death, the right dies with him, unless he leaves a widow or children, in which case the right is continued by statute to them, and to no others.  They and they only can assert it.

But we will not rest our decision, as we well might do, upon the ground that it has not been made to appear, by a finding of 'the Circuit Judge, that Mrs. Permenter was the head of a family, and therefore had a homestead exemption in her property, which was free from the lien of any judgment that might have been against her, and which she could have conveyed the grantee taking same free from the lien of such judgments.  Let it be conceded for the present that she had such right, does it follow that she could devise the same, and the devisee would take it free from the lien of such judgment in like manner as the grantee would?  We think not.  The line of cases last above referred to were decided upon the established fact that the grantor was entitled to assert the homestead claim at the time of the conveyance; that the land then being free from the lien of an existing judgment passed to the grantee free from such lien, and after it vested in the grantee it could not be subject to the lien of a judgment against the grantor, for the reason that it no longer belonged to him, but to some one else.  In such cases the right to assert homestead exemption did not cease or terminate in the grantor by the conveyance.  Such is not the case in a devise.  A will does not take effect until death.  The homestead right continues in the head of the family no longer than death.  The

event, death, that gives efficacy to a devise, terminates the homestead right of the devisor. The instant the homestead right terminates, which until that moment had prevented it from doing so, the lien of the judgment attaches. It is difficult, then, to see how the devise would pass to the devisee free from such lien. There is no more reason for saying that a devisee would take such property free from the lien of an existing judgment than to say that a distributee would take it free therefrom. In one instance the property is transferred to the devisee by will: in the other, to the distributee by law. Indeed, to say that the devisee would take such property free from lien of an existing judgment against the devisor, and deny that the distributee would take it free from an existing judgment against the intestate, would be to attribute a higher power to a will than the statute of distributions itself possesses. Death terminates the right to homestead exemption in the head of the family, whether he die testate or intestate. That right having terminated, if there be no widow or child in whom the right is continued by the homested laws, the statute making the property of such decedent liable for the payment of his debts becomes operative. There is no longer any staying hand of the Constitution; no longer any obstacle to a judgment becoming a lien thereon; no longer any questions of homestead rights or exemptions—for gone are such.

For the foregoing reasons, the exceptions are overruled, and the judgment of the lower Court is affirmed.

MR. CHIEF JUSTICE WATTS, and MESSRS. JUSTICES COTHRAN and STABLER, and MR. ACTING ASSOCIATE JUSTICE RAMAGE, concur.