14448

*EX PARTE* MORROW
BONEBRAKE *ET AL.* v. MORROW

(190 S. E., 506)

April, 1936.

*Messrs. Dobson & Dobson,* for appellant,

*Messrs. Hall, Vassy & Hall,* for respondent,

March 4, 1937.

The opinion of the Court was delivered by MR. JUSTICE BONHAM.

The appellants, as Receivers of the Bank of Blacksburg; S. C., began action against Mrs. Zilpha P. Morrow to recover judgment on notes made and delivered by her to the Bank of Blacksburg. The summons and complaint ·were dated January 22, 1936. At the same time the action was

filed a warrant of attachment was issued by the clerk of the Court for Cherokee County, based upon the fact that the defendant, Mrs. Zilpha P. Morrow, was a nonresident; she having been a resident of the City of Charlotte, N. C., since the year 1926. By authority of the warrant of attachment, the sheriff of Cherokee County attached a dwelling house and two lots in the town of Blacksburg, belonging to Mrs. Zilpha P. Morrow, on January 23, 1936. An order for publication of summons was procured, but the defendant was personally served at her home in Charlotte, N. C., the 24th of January, 1936. She made no appearance, nor answer to the complaint, and on March 9, 1936, the plaintiff took judgment against her in the sum of $2,662.78; and judgment was entered thereon and execution issued March 10, 1936. The sheriff advertised the property for sale the first Monday in April, 1936.

February 8, 1936, counsel for Mrs. Morrow gave notice to plaintiff's counsel that Mrs. Morrow had returned to her home in Blacksburg, and gave notice of her claim of homestead in the house and lot attached. After the order for judgment and sale of the attached property, Mrs. Morrow's attorneys gave notice in writing to the sheriff of her claim of homestead and advised him to set off her homestead. When he did not, and after he had advertised the property for sale on April 6, 1936, they gave the sheriff an application to have Mrs. Morrow's homestead appraised and set off according to law. Finding that the sheriff had taken no steps to this end, they, on March 6, 1936, filed a petition with Judge Sease; and on March 26, 1936, Judge Sease issued a rule requiring the sheriff to show cause before him on April 3, 1936, why he should not set off to petitioner her homestead in the lands attached before selling the same. On the hearing, Judge Sease granted an order directing the sheriff forthwith to set off said homestead, and the sale of the attached property was stayed until the homestead was set off.

This hearing was had on the petition, the pleadings, the order for judgment by Judge Johnson, the return of the sheriff, the affidavit of R. A. Dobson, Esquire, and the affidavit of Mrs. Morrow in reply.

The order of Judge Sease was dated April 4, 1936, and subsequently, on April 13, 1936, he filed his decree in the case. From this decree the appeal is taken to this Court.

There are four exceptions.

Exception 1 has three specific citations of error. The body of Exception 1 contains the issues which are of controlling force. That exception is in this language:

"Because His Honor * * * erred in finding as follows:

" 'After considering the pleadings, the affidavits and arguments of counsel, I reached the conclusion that, at the time the judgment was obtained by plaintiffs in this action against petitioner, who is defendant in the main action, she was and still is the head of a family residing in this State and as such is entitled to the protection of the provisions of the Constitution and laws of this State exempting from attachment, levy and sale, lands of the head of the family residing in this State, not exceeding the value of the sum of One Thousand and no/100 ($1,000.00) Dollars; and I hold that the judgment in this case creates no lien upon so much of the property of the petitioner herein as does not exceed in value the sum of One Thousand and no/100 ($1,000.00) Dollars which can be determined only by regular proceedings to appraise and set off the homestead, as provided by law.' "

Judge Sease holds that Mrs. Morrow, at the time the judgment was obtained in this case, was the head of a family residing in this State. He denied the contention that the right of the petitioner is subject to the lien of the attachment.

Petitioner's counsel contend that the finding of the trial Judge that the petitioner is the head of a family and resident of this State cannot be reviewed by this Court.

The contention is without merit. The facts are not in controversy in this case. It is uncontradicted that from 1926 until February 1, 1936, the petitioner lived in Charlotte, N. C. That in 1930 the petitioner conveyed the house and lot in Blacksburg to her son Marvin, a citizen of Charlotte, N. C.; the consideration being that Marvin would support Mrs. Morrow and her infant daughter. Here was, by the strongest implication, the declaration that petitioner had abandoned her residence in Blacksburg. On August 11, 1934, Marvin having married, the property was conveyed to her son, Robert, upon the same consideration, the strongest implied affirmation of her abandonment of her residence in this State, and of her legal and actual residence in Charlotte, N. C. In October, 1935, Robert conveyed the property to her in order that she might borrow money to make repairs on the house, which was leased to Mr. Hoke.

But the question of her residence in Charlotte is fixed beyond question by petitioner's own action. She was sued and her property was attached as a nonresident. This was in January, 1936. She made no answer to the complaint and upon proper proof of her liability on the notes, the basis of the suit, and of her nonresidence, Judge Johnson gave judgment against her and ordered the sheriff to sell the property. When the summons and complaint were served on her, she was apprised that her property was attached because she was a nonresident. She never contested this allegation of nonresidence. She took no steps to have the attachment set aside on the ground that she was a resident of this State. These facts are undisputably true. In February, 1936, after the property is attached, she returns to Blacksburg and seeks to claim a homestead in the attached real estate on the ground that she is the head of a family residing in this State. The

claim is that her daughter, an infant under the age of twenty-one, is the other member of the family, which entitles her to call herself the head of a family; but that daughter is still residing in Charlotte, N. C., and has been for ten years.

"Residence. Living or dwelling in a certain place permanently or for a considerable length of time; The place where a man makes his home, or where he dwells permanently, or for an extended period of time." Black's Law Dictionary, page 1543.

"Resident. Dwelling, or having an abode, in a place for a continued length of time." Webster's New International Dictionary.

When the Constitution and laws of South Carolina (Const., Art. 3, § 28; Code 1932, § 9085 *et seq.*) beneficently guaranteed a homestead to the head of a family residing in this State, it meant one who was an actual and legal resident of the State, and not one who has abandoned residence in this State and for ten years lived out of the State; and who, when sued, returns for the purpose of claiming a homestead.

"It is freely conceded that the constitutional and statutory provisions for homestead exemptions are such wise and beneficent measures as to require at the hands of the Court a liberal interpretation and construction in order that the end sought to be accomplished may not be defeated.

"At the same time, it is recognized that they must not receive such broad and liberal interpretation and construction as will make of them instruments of fraud and oppression." *Baker et al. v. De Witt,* 140 S. C., 114, 118, 138 S. E., 626, 627.

If one who has abandoned a residence in this State and established one in another state may by returning to this State claim a homestead exemption in property which has been attached as that of a nonresident, and thus defeat the rights of creditors fixed by the statutory provision for the

attachment of the property of nonresident debtors, then such statutory provisions are a delusion and a snare.

Two things are essential to entitle one to the exemption of the homestead provided by the Constitution and laws of this State; the claimant must be the head of a family *and* a resident of this State. Unless these two conditions exist in co-ordination, the claim of homestead is defeated.

In *Trimmier v. Winsmith*, 41 S. C., 109, 19 S. E., 283, 285, quoting from *Chalmers v. Turnipseed*, 21 S. C., 126, 137, the Court said: " 'The exception depends upon certain conditions and surroundings, to wit: First, there must be a head of a family; and, second, there must be a homestead, a dwelling house, a place where the head of a family resides. When these two conditions are present, the constitutional exemption as to realty attaches, and, as long as they exist, the constitution is a perfect shield.' So that Dr. Winsmith was the head of a family residing within this state, and as such was entitled to a homestead as against the debt of the plaintiff, provided there was 'a dwelling house,—a place where the head of the family resides,' "

The Court found that there was no such dwelling house, and that Dr. Winsmith was not entitled to a homestead.

This case is cited only to show that two conditions are necessary to support the claim of homestead. Claimant must be the head of a family and residing in this State. If it should be conceded, for the sake of argument, that Mrs. Morrow is the head of a family, the proof is conclusive that she is not the head of a family residing in this State in the legal meaning of such term.

It may be pertinent to remark that the homestead exemption ceased to exist when the family residing in this State ceased so to reside, either from removal or death.

"It is clear from the foregoing authorities that only a resident of this state may claim homestead exemption in his

or her property, as against his or her debts, and that when such exemption is claimed, the claimant must bring himself or herself within the definition of the 'head of a family' in the sense that term is used in the homestead laws." *Dorn v. Stidham,* 139 S. C., 66, 82, 137 S. E., 331, 336.

With equal pertinency it may be said that such claimant must bring himself or herself within the definition of "residing in this State" in the sense that term is used in the homestead laws.

We think his Honor, the Circuit Judge, was in error when he held that the attachment of the real property in which the homestead exemption is now claimed did not give the attaching creditor a lien prior to the homestead claim.

The attachment in this case was issued under the provisions of Section 527 of the Code of 1932. Section 532 of the chapter relating to attachments provides: "Said attachment shall be a lien subject to all prior liens, *and bind the real estate attached from the date of lodgment."* (Italics added.)

In this case the attachment was levied on the real estate on January 23, 1936, and the lien attached from that date.

In the case of *Pender v. Lancaster,* 14 S. C., 25, 37 Am. Rep., 720, Mr. Chief Justice Willard, for the Court said:

"As has been already said, when there are conflicting rights to any subject of property, they are always adjusted according to their relative priorities, having regard to the time when they commenced to be operative, *so as to create a vested interest in such property.* It cannot be disputed that the execution in the present case took, by the levy, *a lien, a special property,* in the horse levied upon, for the purpose of the execution, and that such lien existed effectively in the hands of the sheriff, *as the agent of the law and of the parties, from the time of the levy.* The right of homestead subsequently arising, was, necessarily, subordinate to this right, because later in point of time.

"It has already been said, in substance, that if a subsequently accruing right of exemption could defeat the lien of an execution levied upon personal property, it could also defeat the lien of a judgment upon land. *There is no difference in the nature of these two liens,* as they are allowed for the protection of the same rights and follow the same general principles. * * * *Both are equally amenable to the rule that rights must be determined according to their respective priorities."* (All italics added.)

In that case Pender married after the levy on his horse, and claimed the homestead exemption. Properly, it was denied.

The opinion in that case is authority in our case because if the petitioner has any right of homestead exemption, it arose since the attachment of the lien in the attachment proceedings. She had left her residence in Blacksburg in 1926, and resided in Charlotte, N. C., until 1936. If she had a right to homestead, she had lost it. The lien of the attachment became operative January 23, 1936. She did not return to Blacksburg until February 1, 1936, and took no steps toward claiming her homestead until about March 13 or 14 of that year.

For the reasons set out in the *Pender case* at greater length than we have cited them, it is patent that the claim of homestead cannot displace the priority of the attachment lien.

"Although, as has already been seen, it is a general rule that the lien of a judgment will not attach to a homestead while it is occupied or held as such, yet in most of the states the lien of a judgment existing prior to the occupation by the debtor of the land as a homestead, or his declaration of his intention to hold it as such, is superior to the homestead right, and the land may be subjected to the satisfaction and discharge of the judgment. Accordingly, one who becomes a house-holder, or head of a family, after a judgment lien has attached to his land, is not entitled to a homestead in the

land paramount to the lien till its discharge." 13 R. C. L., 615.

"It has frequently been held that the lien acquired by the seizure of and levy under an attachment on the lands of a debtor, is not divested by a subsequent occupation of the lands for homestead purposes, and that in such cases the lands may be sold to satisfy the claims of attaching creditor, under execution issued on a judgment founded on the attachment, notwithstanding the fact that after the levying of the attachment, but before the levying of the execution, or the entering of the judgment in the attachment proceedings, the debtor occupies, the property for homestead purposes. This rule is based on the principle that such right is from the time the lien attaches by the seizure, a vested right and property; of course, the defendant in such case has the right to make the land his homestead, but he can do so only in subjection to the attachment lien." 13 R. C. L., 616.

The following citations are taken from the argument of appellant's attorneys. Many more citations might be made:

"Under this authority is cited Ann. Cas., 1913-B, 1150, from which we quote as follows:

" 'Thus in *Kelly v. Dill,* 23 Minn., 435, it appears that plaintiff bought property for the purpose of making it his homestead. On October 29, 1874, suit was brought in which a writ of attachment was issued and the lands were attached on October 3, 1874. On January 2, 1875, a judgment was recovered against the defendant, and the same day an execution was issued thereon, by virtue of which the property was afterward sold. After October 31, 1874, but prior to January 2, 1875, the plaintiff moved on the land and into the dwelling house thereon and proceeded to occupy the same with his family as his homestead, pursuant to his previous intentions and the arrangements he had made at the time he purchased the property. The Court said: "The only question remaining is, can the owner defeat the lien of an attachment previously levied, by moving upon the land and

making it his homestead? * * * The proposition that property may be seized, attached, or levied upon, to answer the debts of the owners, includes the further proposition that such seizure, attachment, or levy may be made effectual by a sale, or any subsequent acts necessary for that purpose. The liability to seizure implies the liability to sale. The right to sell is fixed by the seizure. Such right is, from the time the lien attaches by the seizure, a vested right and property. In this respect that is no difference between a lien secured by a levy on an attachment and one secured by the docketing of a judgment, or the levy of an execution, except that it may be defeated by dissolution of the attachment, or failure to obtain judgment." To the same effect see *Robinson v. Wilson*, 15 Kan., 595, 22 Am. Rep., 272; *Avery v. Stephens*, 48 Mich., 246, 12 N. W., 211; *Davis Sewing-Machine Co. v. Whitney*, 61 Mich., 518, 28 N. W., 674.

" 'In *Bullene v. Hiatt*, 12 Kan., 98, the Court said: "The main question in this case seems to be, whether the homestead right defeats the attachment-lien. We think it does not. The attachment-lien existed nearly three months before the homestead right was created. And while homestead laws are everywhere to be considered favorably, yet they are not to be so construed as to destroy pre-existing rights. Of course the defendant in this case had the right to make said land his homestead, but he could do so only in subjection to the attachment-lien. An attachment-lien, like other liens, though not an estate in the land (*Chick v. Willetts*, 2 Kan. [384], 391), is such a vested interest therein that it cannot be affected by any subsequent act of the debtor. A debtor could as well defeat and destroy a mortgage-lien, a judgment lien, a mechanic's lien, or any other lien or incumbrance upon real estate, by moving upon the land and making it his homestead, as he could by so doing defeat or destroy an attachment-lien."

" 'When an attachment is properly levied on lands not then exempt from attachment and execution, a lien is created

which no subsequently arising exemption can supplant; and in so thinking, we are sustained by a decided preponderance of the adjudications upon this subject.

" 'Thompson on Homestead and Exemptions, p. 317; *Smith v. Richards,* 2 Idaho (Hasb.), 498; 21 P., 419; *Tillar v. Bass,* 57 Ark., 179, 21 S. W., 34; Ann. Cas., 1913-B, 349 and note.' "

We think there is no merit in the exception that Judge Sease modified the order of Judge Johnson.

That order was nothing more than the usual order for judgments. He did not attempt to consider or adjudicate the right of the petitioner to have homestead set off to her. Judge Sease's order deals fundamentally with the issue of petitioner's claim to have homestead appraised and set off.

We do not think Rule 64 applies to a proceeding of the nature of the one we are considering. It was not incumbent on Judge Sease to require the defendant to give bond.

The order and opinion of the Circuit Judge, appealed from, is reversed, and the petition is dismissed.

Mr. Chief Justice Stabler and Messrs. Justices Carter, Baker and Fishburne concur.