0380

ALTON NEWTON EVANGELISTIC ASSOCIATION, INC., Appellant, v. SOUTH CAROLINA EMPLOYMENT SECURITY COMMISSION, Respondents.

(326 S. E. (2d) 165)

Court of Appeals

*George G. Reaves,* Florence, *for appellants.*

*William H. Griffin* and *Sandra D. Bell,* Columbia, *for respondents.*

Heard Sept. 25, 1984.

Decided Jan. 31, 1985.

CURETON, Judge:

The sole question presented by this appeal is whether the Alton Newton Evangelistic Association, Inc., is a church within the meaning of Section 41-27-260(10) of the South Carolina Employment Security Law and is therefore exempt from contributing to the unemployment insurance fund. The South Carolina Employment Security Commission held that the Association was not a church and the circuit court affirmed the decision. We also affirm.

The Association claims an exemption under Code Section 41-27-260(10) (Cum. Supp. 1983) which provides in relevant part:

> (10) For the purposes of items (2) and (3) of Section 41-27-230 [definitions of employment] the term "employment" shall not include:
> (a) Service performed in the direct employ of a church or convention or association of churches, or an organization which is operated primarily for religious purposes and which is operated, supervised, controlled, or principally supported by a church or convention or association of churches.

In reviewing the decision of an administrative agency, ██ our scope of review is limited. The ageny findings of fact are not overturned if they are supported by substantial evidence. *Carter v. South Carolina Coastal Council,* 281 S. C. 201, 314 S. E. (2d) 327 (1984). The agency's rulings on questions of law also are not disturbed if they are sound as a matter of law. S. C. Code Ann. Section 41-35-750 (1976).

We find substantial evidence in the record to support the following relevant findings of fact by the Commission:

> The Alton Newton Evangelistic Association, Inc. was formed [on] April 17, 1969 for the ... purpose of evangelizing, preaching the gospel, and conducting revivals and regular church services, propagating the faith throughout the United States and the world and doing all acts necessary or advantageous in [furtherance of] these purposes. The [Association] does not own ... a church [building], neither [is] it ... [affiliated] with an organized [conventional] church or denomination. Reverend Alton Newton, President, does conduct revival services and all proceeds of such revivals are controlled by the corporation.

> In November, 1972, the ... Association ... [began] the construction of a rest home for the aged and infirm. This [stemmed from] a desire to provide ... a facility [to] protect and preserve the health and welfare of [Florence County area] residents. The facility [is open to] residents [of all counties, races, colors, creeds and religions].

> In 1976, the [Association] began operation of The Star Mount Villa Rest Home. There are approximately ninety employees. ... The [Association] also owns and operates a snack bar and drugstore which is located near the rest home for the convenience of [the] residents and visitors. Reverend Newton conducts chapel services at the rest home and considers the operation of the rest home ... a ministry that transcends ... normal pastoral activities [because] he meets the needs of the whole man.

> Funding for the operation of the rest home is principally derived from three sources: State Agency — Department of Social Services; Supplemental Security Income Program; and voluntary contributions from solicited individuals ... attending revivals conducted by

Reverend Alton Newton. Exemptions from federal income tax under ... the Internal Revenue Code was granted on July 28, 1969.

Construing Code Section 41-27-260(10)(a) (Cum. Supp. ██ 1983), the Commission and the trial court concluded that the Association was not a church because its primary purpose was operating nursing homes, a secular activity, rather than conducting worship services.[1] Although we refrain from characterizing the purpose of the Association as primarily secular, we do find that the Association does not otherwise meet the basic definition of a church.[2]

For First Amendment reasons, this Court and most courts have traditionally been disinclined to become entangled in defining a "church." "Nevertheless, since church[es] are exempted from unemployment insurance taxes, determination whether an organization is a 'church' will necessarily be made, despite the difficulties of interpretation." *Young Life Campaign v. Patino*, 122 Cal. App. (3d) 559, 176 Cal. Rptr. 23 (1981).

In construing any statute, the court's duty is to ascertain ██ and give effect to the intention of the legislature. *Citizens and Southern Systems, Inc. v. South Carolina Tax Commission*, 280 S. C. 138, 311 S. E. (2d) 717 (1984). With respect to the Employment Security Law, the General Assembly has clearly stated its intentions that the Law protect those involuntarily unemployed against economic insecurity caused by the inability of industry to provide stable employment. S. C. Code Ann. Section 41-27-20 (1976). As social legislation, the Employment Security Law should be construed to provide protection to as many employees as possible. *Stone Manufacturing Co. v. South Carolina Employment Security Commission*, 219 S. C. 239, 64 S. E. (2d) 644 (1951); *In re Oakwood Cemetery Association*, 20 A. D. (2d) 590, 245 N.Y.S. (2d) 262 (1963).

---

[1] The Association does not contend it is "an organization which is operated primarily for religious purposes and is operated, supervised, controlled or principally supported by a church or convention or association of churches."

[2] One's freedom to hold whatever religious belief he pleases is absolute and no state definition of religion which discriminates on its face against a particular religious doctrine will satisfy constitutional requirements. *Young Life v. Division of Employment and Training*, 650 P. (2d) 515 (Colo. 1982).

■ To qualify for an exemption under Section 41-27-260(10)(a), the Association has the burden of proving it is a "church." A church has been defined as an organization for religious purposes. *Guam Power Authority v. Bishop of Guam*, 383 F. Supp. 476 (D. Guam 1974); *Williams v. Williams*, 215 N. C. 739, 3 S. E. (2d) 334, 338 (1939); *State v. Vogenthaler*, 89 N. M. 150, 548 P. (2d) 112 (N. M. App. 1976); *Appeal of Upper St. Clair Tp. Grange No. 2032*, 397 Pa. 66, 152 A. (2d) 768 (1959); *In Re Geppert's Estate*, 75 S. D. 96, 59 N. W. (2d) 727, 731 (1953); *Hackfeld v. Ryburn*, 606 S. W. (2d) 340, 342 (Tex. Civ. App. 1980); *see* 76 C.J.S. *Religious Societies* 1 (1952).

■ In the context here used, an "organization" is composed of persons sharing common tenets, precepts, purposes and beliefs. *St. Martin Evangelical Lutheran Church v. South Dakota*, 451 U. S. 772, 101 S. Ct. 2142, 68 L. Ed. (2d) 612 (1981); *McClure v. Salvation Army*, 323 F. Supp. 1100 (N. D. Ga. 1971), *aff'd*, 460 F. (2d) 553 (5th Cir. 1972); *Vic Coburn Evangelistic Association v. Employment Division*, 35 Or. App. 655, 582 P. (2d) 51 (1978).

The Association presented no evidence that it is an organization for religious purposes. The record contains no evidence as to its adherents, members, followers or congregation. In fact, although the Reverend Newton testified he conducted regular worship services at the nursing home, he also testified that residents of the home were members of "every conceivable" denomination and faith.[3]

Having in mind the Court's scope of review, the evidence presented and the purpose of the Employment Security Law, we find both substantial evidence of record and legal precedent to support the Commission's holding that the Association is not a church and is therefore not entitled to be exempted from contributing to the unemployment insurance fund.

Accordingly, the order of the trial court affirming the Commission's decision is

Affirmed.

SANDERS, C. J., and GARDNER, J., concur.

---

[3] Reverend Newton also testified that the corporation had three officers and a board of directors, but said nothing about these persons being adherents of the Association's beliefs.