2267

SOIL REMEDIATION COMPANY and Yadkin Brick Company, Inc., Plaintiffs v. NU-WAY ENVIRONMENTAL, INC., Defendant and Third-Party Plaintiff, Respondent v. CAROLINA EASTMAN DIVISION, a Division of Eastman Kodak Company, Third-Party Defendant, Yeargin, Inc., Third-Party Defendant, Appellant.

(453 S.E. (2d) 253)

Court of Appeals

*Stephen E. Hudson* and *R. Scott Tewes,* both of *Kilpatrick & Cody,* of Atlanta, GA, *for appellant.*

*W. Thomas Lavender, Jr.* and *Russell T. Burke,* both of *Nexsen, Pruet, Jacobs & Pollard,* Columbia, *for respondent.*

Heard Nov. 1, 1994.

Decided Dec. 12, 1994; Reh. Den. Jan. 26, 1995.

GOOLSBY, Judge:

The dispositive issue in this appeal by Yeargin Inc. from an order denying its motion to compel Nu-Way Environmental, Inc. to arbitrate their contractual dispute concerns whether a notice of arbitration that appears at the top of the first page of the contract between the parties satisfies the requirements of South Carolina Code Ann. § 15-48-10(a) (Supp. 1993). We hold it does so and reverse.

The notice is question is printed, not typed, in all-capital, boldface letters and in a font size that is somewhat larger than the font used for the text of the contract. *Viz.*:

> THIS SUBCONTRACT IS SUBJECT TO ARBITRA-TION PURSUANT TO SECTION 15-48-10 CODE OF LAWS OF SOUTH CAROLINA (1976).

The trial court held Yeargin and Nu-Way were not required to arbitrate their contractual dispute because the "heading [is] not underlined pursuant to [section] 15-48-10." Section 15-48-10(a) provides in pertinent part:

> Notice that a contract is subject to arbitration pursuant to this chapter shall be typed in underlined capital let-ters, or rubber-stamped prominently, on the first page of the contract and unless such notice is displayed thereon the contract shall not be subject to arbitration

Nu-Way would have us follow a bright-line rule, argu-ing for a strict or literal construction of section 15-48-10(a). It suggests we interpret the word "underlined" simply to mean "to draw a line under." We decline to adhere to this narrow interpretation.

The primary or fundamental rule of statutory construction a court must follow is to ascertain and give effect to the legislature's intention or purpose as expressed in the statute. *Green v. Thornton*, 265 S.C. 436, 219 S.E. (2d) 827 (1975); *Alton Newton Evangelistic Ass'n, Inc. v. South Carolina Employment Sec. Comm'n*, 284 S.C. 302, 326 S.E. (2d) 165 (Ct. App. 1985). Although there is no single, invariable rule for determining legislative intent, "the intention of the legislature is to be ascertained primarily from the language used in the statute. . . ." 82 C.J.S. *Statute* § 322(a), (b), at 571 (1953); *see McMillen Feed Mills, Inc., of South Carolina v. Mayer*, 265 S.C. 500, 220 S.E. (2d) 221 (1975) (the rules regarding statutory construction are subservient to the rule that legislative intent must prevail if that intent can be reasonably discovered in the language used, which language must be construed in light of the statute's intended purpose). Unless there is something in a statute requiring a different interpretation, the words used in the statute must be given their ordinary meaning. *Hughes v. Edwards*, 265 S.C. 529, 220 S.E. (2d) 231 (1975).

Where, however, there is something about the statute that makes it clear the legislative did not intend the letter of the statute to prevail, the court can consider the spirit of the enactment. 82 C.J.S. *Statutes* § 325 (1953); *see Spartanburg Sanitary Sewer Dist. v. City of Spartanburg*, 283 S.C. 67, 74, 321 S.E. (2d) 258, 262 (1984) ("A statute must be construed in light of its intended purpose, and, if such purpose can be reasonable discovered from its language, the purpose will prevail over the literal import of the statute.") (citing *Abell v. Bell*, 229 S.C. 1, 91 S.E. (2d) 548 (1956)). "[T]he court will reject the ordinary meaning of words used in a statute" and apply the rule of construction according to the spirit of the law when to accept the ordinary meaning of such words "would lead to a result so plainly absurd that it could not possibly have been intended by the Legislature." *South Carolina Bd. of Dental Examiners v. Breeland*, 208 S.C. 469, 480, 38 S.E. (2d) 644, 650 (1946) (citations omitted).

Nu-Way loses, irrespective of whether we employ a strict or a liberal construction.

Looking solely at the meaning of the word "underlined," the ordinary meaning of the term is not limited to "drawing a line

under." "To underline" also means "to emphasize or cause to stand out," THE AMERICAN HERITAGE DICTIONARY 1318 (2d ed. 1982), or "to stress" WEBSTER'S NEW UNIVERSAL UNABRIDGED DICTIONARY 1993 (2d ed. 1983). How better to cause a notice to stand out or to stress a notice than to print the notice in all-capital, boldface letters? The notice at issue here satisfies the literal requirements of section 15-48-10(a).

Assuming, however, that the word "underlined" can mean only "to draw a line under," then we would hold that this is one of those instances where adherence to the literal meaning of the words used in a statute would result in absurdity, thus defeating the legislature's intended purpose in enacting the statute.

A bright-line rule or a rule based on the literal meaning of the words used in section 15-48-10(a) would look only to whether the notice, which must appear on the first page of the contract, was either "typed in underlined capital letters" or "rubber-stamped prominently."

A bright-line rule would not permit a notice to be *printed*, even computer printed, because section 15-48-10(a) uses the word "typed" and the word "typed" literally means "to write with a typewriter." THE AMERICAN HERITAGE DICTIONARY 1309 (2d ed. 1982).

A bright-line rule, which assumes "to underline" means only "to draw a line under," would invalidate a notice that was printed in underlined capital letters but would permit a notice that was "typed in underlined capital letters" so small that it could only be read with the aid of a powerful magnifying glass. A bright-line rule would invalidate a notice that was "typed in [double] underlined capital letters" but would permit a notice that was "typed in underlined capital letters" and employed a foreign language.

The following notices would flunk a bright-line rule, if "typed":

THIS CONTRACT IS SUBJECT TO ARBITRATION PURSUANT TO § 15-48-10 OF THE SOUTH CAROLINA CODE OF LAWS (1976).[1]

---

[1] The notice has no line drawn under it.

This Contract Is Subject To Arbitration Pursu-ant To § 15-48-10 of the South Carolina Code of Laws (1976).[2]

THIS CONTRACT IS SUBJECT TO ARBITRATION PURSU-ANT TO § 15-48-10 OF THE SOUTH CAROLINA CODE OF LAWS (1976).[3]

The following notices would flunk a bright-line rule, if "printed":

<u>THIS CONTRACT IS SUBJECT TO ARBITRATION PURSU-ANT TO § 15-48-10 OF THE SOUTH CAROLINA CODE OF LAWS (1976).</u>[4]

<u>THIS CONTRACT IS SUBJECT TO ARBITRATION PURSU-ANT TO § 15-48-10 OF THE SOUTH CAROLINA CODE OF LAWS (1976).</u>[5]

The following notices, however, would pass a bright-line rule, if "printed":

THIS CONTRACT IS SUBJECT TO ARBITRATION PURSUANT TO § 15-48-10 OF THE SOUTH CAROLINA CODE OF LAWS (1976).

THIS CONTRACT IS SUBJECT TO ARBITRATION PURSUANT TO § 15-48-10 OF THE SOUTH CAROLINA CODE OF LAWS (1976).

THIS CONTRACT
IS SUBJECT TO
ARBITRATION PURSUANT
TO § 15-48-10 OF
THE SOUTH CAROLINA
CODE OF LAWS (1976).

Indeed, any of these last three notices, if "typed, could be included anywhere on the first page of the contract and the notice would satisfy the bright-line rule. The notice need only be "prominently" displayed on the first page of the contract if it is "rubber-stamped." If the notice is "typed," it need not be "prominently displayed.

In reaching the result that it did, the trial court elevated from over substance. The notice at issue here is prominently displayed at the very top of the contract. It cannot be easily overlooked, even by the most casual observer.

---

[2] The notice has no line drawn under it and is not in all-capital letters.

[3] The notice has two lines drawn under it and the rule does not expressly allow for double underlining.

[4] The notice, although it is in all-capital letters and has a line drawn under it, is printed, not typed.

[5] Aside from being printed, the notice has two lines instead of one drawn under it.

The purpose of the notice requirement of section 15-48-10(a) is to alert the contracting parties that contract requires arbitration of disputes arising under the contract. The notice questioned here clearly satisfies that purpose completely. Our holding regarding the sufficiency of the notice, moreover, is consistent with the public policy of favoring arbitration. *Trident Technical College v. Lucas & Stubbs, Ltd.*, 286, S.C. 98, 333 S.E. (2d) 781 (1985), *cert. denied*, 474 U.S. 1060, 106 S.Ct. 803, 88 L.Ed. (2d) 779 (1986).

Because we have determined the notice appearing at the top of the contract between the parties satisfies the notice requirements of the South Carolina Uniform Arbitration Act, particularly section 15-48-10(a) thereof, Yeargin and Nu-Way must arbitrate their dispute. We do not reach the issue of whether the arbitration agreement is enforceable under federal law.

Reversed.

SHAW, J., concurs.

HOWELL, C.J., dissents in a separate opinion.

HOWELL, Chief Judge (dissenting):

I respectfully dissent. In construing statutes, words therein must be given their plain and ordinary meaning. *Parsons v. Uniroyal-Goodrich Tire Corp.*, 313 S.C. 394, 438 S.E. (2d) 238 (1993). "If a statute's language is plain and unambiguous and conveys a clear and definite meaning, there is no occasion for employing rules of statutory interpretation and the court has not right to took for or impose another meaning." *Miller v. Doe*, 312 S.C. 444, 446, 441 S.E. (2d) 319, 321 (1994).

By straining the imagination, even a "bright line test" can be made to seem hopelessly irreconcilable with practical application. Legislative intent should not fall victim to such an exercise. Obviously, the legislature intended to provide a uniform standard to alert contracting parties of an alternative forum to the traditional court system for resolving disputes. This statute is unambiguous. It requires an arbitration clause to be "typed in underlined capital letters, or rubber-stamped prominently." The plain meaning of "underline" is "to draw a line under." The plain meaning of "typed" in today's high technology environment includes documents produced by a word processor and printer. The arbitration clause at issue was

typed in capital letters but was not underlined, as required by the statute. While I agree that strict construction of this statute may lead to results not intended by contracting parties, it is a matter for the legislature to act upon. Thus, I would affirm the trial court's finding that the arbitration clause failed to meet the statute's requirements.