490 S.E.2d 603

Marlys SCHOLTEC, Appellant,

v.

ESTATE OF William Charles REEVES, II,

of Whom Terry P. Reeves, Personal
Representative, is Respondent.

No. 2704.

Court of Appeals of South Carolina.

Heard June 3, 1997.
Decided July 21, 1997.
Rehearing Denied Sept. 18, 1997.

552

James B. Drennan, III, of Drennan, Shelor, Cole & Evins, of Spartanburg, for appellant.

Roger L. Couch, of Lister, Couch & Courtney, of Spartanburg, for respondent.

HOWELL, Chief Judge.

Marlys Scholtec is the holder of a judgment against William C. Reeves, II. Scholtec appeals from a circuit court order that held that Reeves's Homestead Act exemption survived his

death to the benefit of Reeves's adult and independent children. We reverse.

## I.

In November 1973, judgment was obtained against Reeves and his then-wife, in Minnesota, in the amount of $140,000. Thereafter, Reeves and his wife divorced, and he moved to South Carolina to live near his parents. Reeves had trouble holding meaningful employment due to his service-connected health problems, and spent many of the following years in and out of V.A. hospitals.

In October 1989 Reeves suffered an injury while in a V.A. hospital and sued the federal government, which settled Reeves's claim for $125,000. Reeves died on May 7, 1993, after the settlement was finalized but before the proceeds were received. Reeves died intestate and he was survived by his five adult children, none of whom were dependent on him at the time of his death. The net proceeds from the settlement constituted the only assets of his estate.[1]

The government forwarded the settlement money in July 1993 and Reeves's attorney deposited the proceeds with the court for Reeves's estate in August 1993. Scholtec domesticated her Minnesota judgment in Spartanburg County, and she filed her creditor's claim, then amounting to $426,593.19, against the estate in January 1994.

The probate court approved Scholtec's claim, holding that S.C.Code Ann. § 15–41–30(11)(B) (Supp.1996) did not continue the Homestead exemption for Reeves's bodily injury claim proceeds beyond his death. The circuit court reversed, holding that the exemption under section 15–41–30(11)(B) does not terminate upon the death of the debtor and may be claimed by the debtor's spouse or children.

## II.

■ Homestead rights do not exist under the common law, but are a uniquely American institution, having their origins in

---

1. Attorney's fees and expenses for handling the personal injury case amounted to $33,225.58; thus, of the $125,000 settlement, $91,774.42 was actually deposited into the court for Reeves's estate.

the great debtor revolution of the era of "Jacksonian democracy." 40 C.J.S. *Homesteads* § 3 at 175–176 (1991). The homestead interest depends entirely upon constitutional and statutory provisions. *Dorn v. Stidham,* 139 S.C. 66, 76, 137 S.E. 331, 334–35 (1927); 40 Am.Jur.2d *Homestead* § 3 at 117 (1968). The South Carolina Constitution's homestead provision provides that the "General Assembly shall enact such laws as will exempt real and personal property of a debtor." S.C. Const. art. III, § 28. The legislature carried out this constitutional mandate under the "Homestead and Other Exemptions" statute, S.C.Code Ann. §§ 15–41–10 to –35 (1976 & Supp.1996), which provides, in pertinent part, that certain "real and personal property of a debtor domiciled in this State is exempt from attachment, levy, and sale under any mesne or final process issued by any court or bankruptcy proceeding." S.C.Code Ann. § 15–41–30 (Supp.1996).

The rights granted under the Homestead Act bar some creditor claims by exempting certain property from court processes. If one of the qualifying types of property covered by the Act is involved, enumerated in § 15–41–30(1)–(11), the statute blocks a creditor from obtaining property by preventing the court from taking control of property to enforce a judgment. *See generally* S.C.Code Ann. §§ 15–39–10 & 100 (1976) (providing for different kinds of execution); 30 Am. Jur.2d *Executions and Enforcement of Judgments* § 43 at 77 (1994) (Execution is a remedy "afforded by law for the enforcement of a judgment, its object being to obtain satisfaction of the judgment on which the writ is granted."); *United States v. Southern Growth Indus., Inc.,* 251 S.C. 404, 162 S.E.2d 849 (1968) (discussing definitions of attachment and levy).

■ The type of property at issue in this case falls under section 11(B), which provides an exemption for:

The debtor's right to receive or property that is traceable to:

(B) a payment on account of the bodily injury of the debtor or of the wrongful death or bodily injury of another individual of whom the debtor was or is a dependent.

S.C.Code Ann. § 15–41–30(11)(B) (Supp.1996).[2] Unlike several of section 15–41–30's other exemptions, this exemption contains no monetary cap, because, *inter alia,* the "purpose of a personal injury or wrongful death payment is to compensate the victim for something lost, rather than to provide a windfall award." *Cerny v. Salter,* 311 S.C. 430, 432–33, 429 S.E.2d 809, 811 (1993).

Preliminarily, we note that at the time of his death, Mr. Reeves was clearly entitled to the exemption. There is no question that he was domiciled in South Carolina, nor is there a dispute he had a right to the proceeds from his claim against the Government. The fact that he had not yet received the proceeds does not change this conclusion, for by its plain language, subsection 11 does not require the debtor to actually possess the payment, but only have "a right to receive or property that is traceable to" the bodily injury payment. S.C.Code Ann. § 15–41–30(11)(B).

■ Therefore, the question presented is whether Mr. Reeves's exemption terminated at his death or whether it transferred by operation of law to his adult children, all of whom are financially independent of him. This is a novel issue and apparently has never been decided under the current version of the Homestead Act.[3] Scholtec argues that the probate court correctly determined that Mr. Reeves's exemption terminated upon his death, while the estate argues that the circuit court properly reached the opposite conclusion.

Two cases interpreting prior versions of the statute held that a homestead exemption terminates at the debtor's death

---

**2.** This exemption has existed since 1981, though in 1988 "the Legislature merely renumbered former section 15–41–200 as 15–41–30 with slight grammatical changes only." *Cerny v. Salter,* 311 S.C. 430, 432, 429 S.E.2d 809, 811 (1993).

**3.** We recognize that the appropriate version of the Act to apply in this situation is that version which was in effect at the time that the debt arose. *McClenaghan v. McEachern,* 47 S.C. 446, 25 S.E. 296 (1896); *Trimmier v. Winsmith,* 41 S.C. 109, 19 S.E. 283 (1894). For the purposes of this opinion, we assume that the current version of the statute is applicable. Both parties, as well as all courts that have heard this matter to this point have argued and applied only the current version of the Homestead Act. We express no opinion as to when this debt arose.

unless the statute provides otherwise. In *Dorn v. Stidham*, 139 S.C. 66, 137 S.E. 331 (1927), the supreme court stated that

> [d]eath terminates the right to homestead exemption in the head of the family, whether he dies intestate or testate. That right having terminated, if there be no widow or child in whom the right is continued by the homestead laws, the statute making the property of such decedent liable for the payment of his debts becomes operative. There is no longer any staying hand of the Constitution; no longer any obstacle to a judgment becoming a lien thereon; no longer any questions of homestead rights or exemptions—for gone are such.

*Id.* at 94, 137 S.E. at 341. Similarly, in *In re Snoddy's Estate*, 201 S.C. 14, 21 S.E.2d 198 (1942), the court relied on *Dorn* to hold that to succeed to a deceased's homestead exemption, the claimants must come within a statutorily defined class.

*Dorn* and *Snoddy's Estate*, however, were applying former versions of the Homestead Act. Thus, we must determine whether the amendments to the Homestead Act have any impact on the rule announced in these cases. We conclude that they do not.

Admittedly, the former term "head of the family" is not entirely synonymous with the current term "debtor," and the language differences clearly tracked the changes resulting from the 1981 constitutional amendment.[4] Despite these differences, however, the two terms are sufficiently analogous in at least one context. Just as former section 15–41–10 was completely silent as to the death of the "head of the family," section 15–41–30 is silent as to the death of the "debtor." Therefore, it would appear that the amendments do not alter the rule announced in *Dorn* and *Snoddy's Estate* about the effect of a homestead claimant's death—the exemption termi-

---

4. Prior to 1981, the Constitution's Homestead provision granted Homestead rights "to the head of any family." S.C. Const. art. III, § 28 (1976). However, in 1981 this section was amended to provide exemptions to the "real and personal property of a debtor." S.C. Const. art. III, § 28 (Supp.1996). The language in the Homestead Act was altered to reflect this change. *Cf.* S.C.Code Ann. § 15–41–10 (1976) ("A homestead in lands ... shall be exempt to the head of every family."); S.C.Code Ann. § 15–41–30 (Supp.1996) ("The following real and personal property of a debtor" shall be exempt from court process.).

nates upon the death of the debtor. *See also* 40 C.J.S. *Homesteads* § 165 at 326 (1991) ("The homestead right terminates with the death of the homesteader, if there is no surviving person in whom the right is continued by the statute, but where the homestead character has once attached, it may continue for the benefit of a single individual who is the sole survivor of the persons or group designated."); 31 Am. Jur.2d *Exemptions* § 250 at 769 (1989) ("a debtor's right to an exemption is a personal one which does not survive the death of the person in whose favor it exists.").

*Dorn* and *Snoddy's Estate* relied on a statutory provision for continuation of the exemption that has no analogue under subsection 11(B). In both of these cases, the court held that former section 15–41–100, or an earlier version of it, allowed in certain circumstances for the exemption to continue on in the widow and children, or children living on the homestead, beyond the death of the head of the family. *See also Carolina Production Credit Ass'n v. Rogers*, 282 S.C. 184, 189, 318 S.E.2d 357, 358 (1984) (relying on *Dorn* and *Snoddy's Estate* to hold that exemption continued with decedent's widow because she "was within the class of dependents entitled to the homestead exemption at the time of" the debtor's death). These cases referred to successors as belonging to a statutorily defined "charmed circle" or "favored class." Just as the terms "head of the family" and "debtor" are analogous, at least in some instances, the former terms "widow," "child," or "children living on the homestead," share similarities to the current statutory term "dependent of the debtor." In other words, "dependent of the debtor" is the current statute's term to define a charmed circle or favored class for which a property exemption survives the debtor's death. *See* S.C.Code Ann. § 62–2–401 (1987) (Reporter's Comments) (Discussing succession of homestead exemption in light of the similarities between former statute's provisions for the widow and children and the new terminology of "dependents of the debtor.").

Moreover, a careful analysis of the Homestead Act as a whole supports our conclusion that the rule announced in *Dorn* and *Snoddy's Estate* remains viable. *See Nucor Steel v. South Carolina Public Service Comm'n*, 310 S.C. 539, 426 S.E.2d 319 (1992) (To give effect to a statute, a court cannot

adopt a position which defeats its underlying legislative purpose.); *Smalls v. Weed,* 293 S.C. 364, 360 S.E.2d 531 (Ct.App. 1987) (A statute must be read as a whole, and sections which are part of the same general statutory law must be construed together.).

The types of exempt property under the Homestead Act may be categorized into the following classes of persons to whom a particular exemption applies: (1) those who are a "debtor or dependent of the debtor;" or (2) those who are a "debtor." Hence, five property subsections exempt properties of the "debtor or dependent of the debtor." *See, e.g.,* § (1) (residential properties); § (3) (household furnishings); § (4) (jewelry); § (6) (professional materials); § (9) (professional prescribed health aids). Eight other subsections exempt only property of the "debtor." *See, e.g.,* § (2) (motor vehicle); § (5) (interest in cash and liquid assets capped at $1,000); § (7) (unmatured life insurance contract); § (8) (accrued dividend of unmatured life insurance contract); § (10) (various governmental and pension benefits); § (11)(A) (crime victim's reparation award); § (11)(B) (payment for bodily injury); § (11)(C) (life insurance contract). Thus, the plain language of the Homestead Act does, in fact, provide for the survival of the exemption for certain types of property beyond the death of the debtor, while remaining silent as to such application of the exemption to other types of property. As to exemptions that extend to a debtor or his dependents, the death of the debtor does not necessarily extinguish the exemption.

 The primary or fundamental rule of statutory construction a court must follow is to ascertain and give effect to the legislature's intention or purpose as expressed in the statute. *Green v. Thornton,* 265 S.C. 436, 219 S.E.2d 827 (1975); *Alton Newton Evangelistic Ass'n. Inc. v. South Carolina Employment Sec. Comm'n,* 284 S.C. 302, 326 S.E.2d 165 (Ct.App.1985). Although there is no single, invariable rule for determining legislative intent, the language must be read in a sense which harmonizes with its subject matter and accords with its general purpose. *Hitachi Data Systems Corp. v. Leatherman,* 309 S.C. 174, 420 S.E.2d 843 (1992). The Homestead statute is to be construed liberally in the debtor's favor so as not to frustrate the end sought to be accomplished.

*Bonebrake v. Morrow,* 183 S.C. 170, 190 S.E. 506 (1937); 40 Am.Jur.2d *Homestead* § 11–12 (1968).

 The legal maxim, *"expressio unius est exclusio alterius"* is instructive in this instance, stating the long-standing rule of statutory construction that affirmative words imply a negative of that which is not affirmed. *See* 82 C.J.S. *Statutes* § 336 (1953 & Supp.1996); *Little v. Town of Conway,* 171 S.C. 27, 171 S.E. 447 (1933). Applying this principle to construction of the Homestead Act, the plain language of the statute indicates that the legislature did not intend for the exemption of § 15–41–30(11)(B) to survive the death of the debtor and be claimed by dependents of the debtor. As stated above, subsection 11(B) is included in the category which includes only the debtor in the class of persons to whom that particular exemption applies. Clearly, the legislature contemplated the option of extending the various exemptions included in this statute to persons other than the debtor, and, in fact, did so on five occasions within the Act. The absence of language extending the exemption to persons other than the debtor in the eight subsections cited above that apply only to the debtor is significant. Therefore, we conclude that the plain language of § 15–41–30 indicates that the legislature intended that the exemption provided by § 15–41–30(11)(B) apply only to the debtor and to no one else.

Similarly, the statute makes no mention of the estate of the debtor as being an entity entitled to assert the 11(B) exemption. Had the legislature intended to extend the exemption to apply to the estate of the debtor as well as the debtor, we believe that it would have expressly stated so, particularly in light of the extension of certain exemptions to dependents of the debtor mentioned above.[5]

---

**5.** As noted above, the Homestead Act exempts certain property from "attachment, levy, and sale under any mesne or final process issued by any court or bankruptcy proceeding." S.C.Code Ann. § 15–41–30. Respondent argues that the use of the phrase "any court" in the exemption statute renders the exemption involved in this case applicable. We find this argument to be wholly without merit. Although it is true that property that is exempt under the statute is exempt from process issued by any court, including the probate court, there must be an applicable exemption—the "any court" language simply has no bearing on the determination of whether an exemption is applicable.

■ The "rationale for Homestead exemptions is well established: to protect from creditors a certain portion of the debtor's property," *Cerny v. Salter*, 311 S.C. 430, 432, 429 S.E.2d 809, 811 (1993), and to prevent citizens from becoming dependent on the State for support. *American Service Corp. v. Hickle*, 312 S.C. 520, 435 S.E.2d 870 (1993); *see also* 40 C.J.S. *Homesteads* § 3 at 176 (1991) (*Inter alia*, homestead laws shelter the family, permit it to "live beyond the reach of financial misfortune, to protect the family from destitution, and in general, to promote the stability of the welfare of the state.").

In these circumstances at least, there is little likelihood that our interpretation of the statute will subject Reeves's five adult children, who were all independent of him at the time of his death, to financial ruin or dependency on the state. However, we recognize that there may be situations in which this construction could defeat the statute's underlying purpose. One example the circuit court gave is "where a debtor may have been left unable to work from the time of his injury until his death and that the proceeds of his personal injury action may be the only means of future support from the debtor to his family." Despite this possibility of frustrating legislative intent, however, we are confined to the statutory language and agree with Scholtec that the legislature would have broadened the class of persons entitled to claim the exemption under section 11(B) had it so chosen. Because the statute's descriptions of the eleven types of property are further categorized by reference to two categorizes of persons, and these two types of persons are not common to all eleven exemptions, the legislature clearly intended that the terms "debtor," and "dependent of the debtor" shall have *distinct* meanings. *See Smalls v. Weed*, 293 S.C. 364, 360 S.E.2d 531 (Ct.App.1987) (A statute must be read as a whole, and sections which are part of the same general statutory law must be construed together and each one given effect.).

Thus, because Reeves's homestead exemption terminated upon his death, and the Homestead Act's bodily injury provision does not describe a class of persons within which Reeves's five children fall, we reverse the order of the circuit court and

affirm the probate court's order.[6]

Accordingly, for the foregoing reasons, the decision of the circuit court is hereby

**REVERSED.**

GOOLSBY and ANDERSON, JJ., concur.

---

**6.** The estate also argues that regardless of our disposition on the Homestead Act issue, we should remand to the probate court for a determination of allowable estate expenses, e.g., the costs of Mr. Reeves's funeral, his personal representative's commission, the estate attorney's fees, and court costs, prior to the collection of any creditor claims. The probate code clearly gives these expenses priority. *See* S.C.Code Ann. § 62–3–805(a)(1) & (5) (Supp.1996). However, remand is unnecessary because the probate court already granted the estate this requested relief: "the Personal Representative should be required to pay [Scholtec's] claim to the fullest extent possible after the payment of any claims or administrative expenses having a higher priority."