KONDUROS, J.:
**464 In this cross-appeal, J. Chris Lindgren appeals the Master-in-Equity's ruling permitting First Citizens Bank and Trust Company, Inc. (the Bank) to attach postjudgment contributions made to his Individual Retirement Account (IRA) to satisfy the Bank's judgment against him. The Bank appeals the portion of the Master's order finding postjudgment contributions Lindgren made to his 401(k) retirement plan were exempt from execution. We affirm in part and reverse in part.
FACTS/PROCEDURAL HISTORY
J. Chris Lindgren is the sole member of Blue Ox, LLC. Lindgren signed confessions of judgment in 2013, individually and on behalf of Blue Ox, totaling approximately $113,000 after Blue Ox defaulted on loan payments owed to the Bank. Blue Ox is now defunct, and Lindgren failed to pay the judgment. The Bank instituted supplemental proceedings against Lindgren, which are the subject of this appeal. The Bank argued postjudgment contributions made by Lindgren to his IRA, 401(k) plan, and a College Savings Plan were fraudulent transfers and therefore not subject to the protection typically afforded IRAs and 401(k) accounts under section 15-41-30(A)(13) and (14) of the South Carolina Code (2005), commonly referred to as the Homestead Exemption Act.
Lindgren submitted the chart below at the supplemental proceedings to show his pattern and practice of contributing to his retirement accounts. Lindgren testified he changed from a traditional IRA to a Roth IRA in 2014. He also explained he did not contribute to his IRA or 410(k) plan in 2010 and 2011 respectively because of a downturn in the economy and his earnings at that time.
*420 **465 ?
Lindgren testified to being a member or the sole member in numerous limited liability companies (LLCs) doing various types of business but primarily involved in real estate. He also testified to contributing money postjudgment to a 529 College Savings Plan for his daughter's college tuition.
With regard to Lindgren's postjudgment IRA contributions, the Master agreed with the Bank that the issue should be analyzed within the framework established by cases considering the Statute of Elizabeth, section 27-23-10(A) of the South Carolina Code (2007). As a result, the Bank did not have to demonstrate Lindgren intended to defraud creditors because the postjudgment contributions were made without consideration and he failed to retain sufficient assets to pay his debt. However, the Master went on to address Lindgren's intent and concluded the transfers were made to defraud, hinder, or delay creditors because Lindgren knew he owed the judgments and made the contributions into accounts generally exempt from execution by creditors.[1]
With regard to Lindgren's postjudgment 401(k) contributions, the Master's order stated "Lindgren has submitted an Affidavit in an effort to show/establish a 'pattern' of contribution **466 to his retirement account for a number of years. Having carefully reviewed and considered Lindgren's Affidavit, this [c]ourt finds that the voluntary postjudgment transfer to the 401(k) are not subject to execution by [the] Bank." The order later found "With regards to the 401(k), I find that the statute, [section15-41-30(A)(14) of the South Carolina Code], precludes execution of the 401(k) plan."
This cross-appeal followed.
STANDARD OF REVIEW
"Determining the proper interpretation of a statute is a question of law, and this [c]ourt reviews questions of law de novo." Town of Summerville v. City of N. Charleston , 378 S.C. 107, 110, 662 S.E.2d 40, 41 (2008). "Our scope of review for a case heard by a Master permits us to determine facts in accordance with our own view of the preponderance of the evidence." King v. James , 388 S.C. 16, 24, 694 S.E.2d 35, 39 (Ct. App. 2010). Furthermore, fraudulent conduct generally requires proof by clear and convincing evidence. See Ardis v. Cox , 314 S.C. 512, 515, 431 S.E.2d 267, 269 (Ct. App. 1993) ("Fraud is not presumed, but must be shown by clear, cogent, and convincing evidence."); Gordon v. Lancaster , 419 S.C. 48, 59, 795 S.E.2d 857, 863 (Ct. App. 2016) ("The evidentiary standard governing fraudulent conveyance claims brought under the Statute of *421 Elizabeth is the clear and convincing standard.").
LAW/ANALYSIS
I. Lindgren's Issue on Appeal-Postjudgment Contributions to IRA
Lindgren contends the Master erred in finding his postjudgment contributions to his IRAs were not exempt from execution when the Bank failed to establish such contributions were made with the intent to defraud his creditors. We agree.
The relevant portion of section 15-41-30(A) (2005) is subsection (13), which provides:
(A) The following real and personal property of a debtor domiciled in this [s]tate is exempt from attachment, levy, and sale under any mesne or final process issued by a court or bankruptcy proceeding:
**467 (13) The debtor's right to receive individual retirement accounts.... A claimed exemption may be reduced or eliminated by the amount of a fraudulent conveyance into the individual retirement account or other plan .[2 ]
(emphasis added).
In determining whether Lindgren's postjudgment contributions constituted fraudulent conveyances so as to remove them from the protection afforded by subsection (13), the Master turned to the Statute of Elizabeth. It provides:
(A) Every gift, grant, alienation, bargain, transfer, and conveyance of lands, tenements, or hereditaments, goods and chattels or any of them, or of any lease, rent, commons, or other profit or charge out of the same, by writing or otherwise, and every bond, suit, judgment, and execution which may be had or made to or for any intent or purpose to delay, hinder, or defraud creditors and others of their just and lawful actions, suits, debts, accounts, damages, penalties, and forfeitures must be deemed and taken ... to be clearly and utterly void, frustrate and of no effect, any pretense, color, feigned consideration, expressing of use, or any other matter or thing to the contrary notwithstanding.
S.C. Code Ann. § 27-23-10(A) (2007).
South Carolina jurisprudence has established a framework for how the Statute of Elizabeth should be applied.
In interpreting [the Statute of Elizabeth], our courts have held that conveyances shall be set aside under two conditions. First, where the challenged transfer was made for a valuable consideration, it will be set aside if the plaintiff establishes that (1) the transfer was made by the grantor with the actual intent of defrauding his creditors; (2) the grantor was indebted at the time of the transfer; and (3) the grantor's intent is imputable to the grantee. Second, where the transfer was not made on a valuable consideration, no actual intent to hinder or delay creditors must be proven. Instead, as a matter of equity, the transfer will be set aside if the plaintiff shows that (1) the grantor was indebted to him at the time of the transfer; (2) the conveyance was **468 voluntary; and (3) the grantor failed to retain sufficient property to pay the indebtedness to the plaintiff in full-not merely at the time of the transfer, but in the final analysis when the creditor seeks to collect his debt.
Durham v. Blackard , 313 S.C. 432, 437, 438 S.E.2d 259, 262 (Ct. App. 1993).
Lindgren maintains consideration of subsection (13) of the Homestead Exemption Act does not mandate analysis under the Statute of Elizabeth and the cases interpreting it. We agree. When a debtor moves money into an IRA, that money still belongs to the debtor. The money is converted into a protected asset, but ownership is not gifted, transferred, granted, or otherwise conveyed to another party. Therefore, the Statute of Elizabeth is not applicable as it concerns gifts, grants, alienations, bargains, transfers, and conveyances.
To further illustrate why analysis under the Statute of Elizabeth is ill-fitting in this scenario, the initial question that would be *422 presented in such an analysis is whether consideration was or was not given for the transfer. See Durham , 313 S.C. at 437, 438 S.E.2d at 262 (directing differing analyses after the initial question of consideration is determined). In the specific case of IRAs, the contribution is never made for valuable consideration.[3] Consequently, the remaining factors to be considered would be whether (1) the grantor was indebted to the creditor at the time of the transfer; (2) the conveyance was voluntary; and (3) the grantor failed to retain sufficient property to pay the indebtedness to the creditor in full. Id . Consideration of these factors would likely render any postjudgment contribution to an IRA fraudulent as a matter of course. However, if the legislature intended that result, without consideration of actual fraudulent intent, it is unclear from the statute. Because the exemptions in the Homestead Act are to be construed in favor of the debtor, we conclude the Bank **469 must demonstrate an actual intent to defraud by Lindgren in order to remove the disputed contributions from the protection afforded by subsection (13).[4] See In re Holt , 497 B.R. 817, 825 (Bankr. D.S.C. 2013) ("As a general proposition, the exemptions provided under South Carolina law are construed liberally in favor of debtors.") (citing Ex parte Morrow , 183 S.C. 170, 190 S.E. 506, 508 (1937) ); In re Riley , 486 B.R. 711, 716 (Bankr. D.S.C. 2013) (providing exemptions under South Carolina law are generally construed liberally in favor of debtors).
Although it was unnecessary to his ruling, the Master concluded Lindgren's actions in contributing to his IRAs were fraudulent because "Lindgren had full knowledge of the fact that he owed First Citizens a substantial amount of money.... In spite of that fact, Lindgren was aggressively moving money into his IRAs and an education account-all of which might have some limited protections under the Homestead Exemption statutes." The Master concluded this provided evidence of fraudulent intent sufficient to preclude application of the exemption. We disagree.
In determining whether a transaction is tainted by a fraudulent intent to hinder or delay creditors, the court will consider whether certain "badges of fraud" are present.
The facts which are recognized indicia of fraud are numerous, and no court could pretend to anticipate or catalog them all. Among the generally recognized badges of fraud are the insolvency or indebtedness of the transferor, lack of consideration for the conveyance, relationship between the transferor and the transferee, the pendency or threat of litigation, secrecy or concealment, departure from the usual method of business, the transfer of the debtor's entire estate, the reservation of benefit to the transferor, and the retention by the debtor of possession of the property.
**470 Coleman v. Daniel , 261 S.C. 198, 209-10, 199 S.E.2d 74, 79-80 (1973) (quoting 37 Am. Jur. 2d Fraudulent Conveyances § 10 (1968) ).
An inference of fraud may be warranted when multiple badges of fraud are present. Id . at 210, 199 S.E.2d at 80. "A badge of fraud creates a rebuttable presumption of intent to defraud." Royal Z Lanes, Inc. v. Collins Holding Corp. , 337 S.C. 592, 596, 524 S.E.2d 621, 623 (1999).
We acknowledge several badges of fraud are present in this case. Lindgren did not possess sufficient personal assets to pay *423 the debt,[5] Lindgren reserved the benefit of the IRA contributions for himself, and he was obviously aware of the outstanding judgment against him at the time the postjudgment contributions were made. However, the contributions were limited in amount, were not secretive in nature, and most tellingly, were in line with his long-standing pattern of investing in his retirement-conduct that is encouraged by the very existence of the exemption. Overall, these factors rebut the presumption of fraudulent intent under the particular facts of this case and preclude a clear and convincing finding of fraudulent intent. Accordingly, we reverse the Master's finding Lindgren's postjudgment contributions to his IRAs were fraudulent conveyances as contemplated by section 15-41-35(A)(13).
II. The Bank's Issue on Appeal-Postjudgment Contributions to 401(k) Plan
The Bank contends the Master erred in finding Lindgren's postjudgment contributions to his 401(k) plan are not subject to execution. We disagree.
Section 15-41-30(A)(14) provides:
**471 The following real and personal property of a debtor domiciled in this [s]tate is exempt from attachment, levy, and sale under any mesne or final process issued by a court or bankruptcy proceeding:
....
(14) The debtor's interest in a pension plan qualified under the Employee Retirement Income Security Act of 1974, as amended.
"What a legislature says in the text of a statute is considered the best evidence of the legislative intent or will. Therefore, the courts are bound to give effect to the expressed intent of the legislature." Hodges v. Rainey , 341 S.C. 79, 85, 533 S.E.2d 578, 581 (2000) (quoting Norman J. Singer, Sutherland Statutory Construction § 46.03 at 94 (5th ed. 1992)). "We are not at liberty, under the guise of construction, to alter the plain language of [a] statute by adding words [that] the [l]egislature saw fit not to include." Shelley Constr. Co. v. Sea Garden Homes, Inc. , 287 S.C. 24, 28, 336 S.E.2d 488, 491 (Ct. App. 1985).
The plain language of subsection (14) does not provide for any exception to the exemption for 401(k) plans. To impute an exception would require us to read language into the statute that is not there. Furthermore, the legislature knew how to provide for an exception had it desired to do so as evidenced by the "fraudulent conveyance" exception in the preceding subsection. Therefore, the Master's ruling as to the postjudgment 401(k) contributions is affirmed.
CONCLUSION
In sum, we reverse the Master's finding Lindgren's postjudgment contributions to the IRAs are subject to execution and affirm the Master's finding Lindgren's postjudgment contributions to his 401(k) plan are exempt from execution.
AFFIRMED IN PART AND REVERSED IN PART.
SHORT and GEATHERS, JJ., concur.

The Master also concluded the contributions to the College Savings Plan were made to hinder or delay creditors. However, the Master did not rule the funds were subject to execution as the account was empty-presumably because it was used to pay Lindgren's daughter's tuition. Therefore, any issues relating to the 529 College Saving Plan are not the subject of this appeal.

A new version of section 15-41-35(A)(13) became effective in May of last year. However, the part of the subsection relevant to our analysis remains the same as when the supplemental proceedings took place.

Lindgren argues consideration was given for the contributions, but that argument is strained and without merit. Lindgren may receive certain managerial or financial services from the IRA fund manager, but he compensates for those with fees, not by payment of the contribution to the fund manager. Furthermore, he does not exchange his contribution for certain tax advantages. The advantages are simply the result of a particular type of plan created by the government to reward retirement saving.

This conclusion comports with the general rule in bankruptcy that conversion of a non-exempt asset to an exempt asset is not in and of itself a fraudulent act. See In re Jones , 397 B.R. 765, 770 (Bankr. D.S.C. 2008) ("For fraudulent intent to be found, there must appear in evidence some facts or circumstances which are extrinsic to the mere facts of conversion of non-exempt assets into exempt and which are indicative of such fraudulent purpose.") (quoting In re Addison , 540 F.3d 805, 814 (8th Cir. 2008) ).

On appeal, Lindgren suggests the record does not support the Master's finding he did not retain sufficient assets to satisfy the judgment. However, this argument is disingenuous. Lindgren primarily utilized LLCs to conduct his business. Unless the Bank attempts to pierce the corporate veil, the assets of the LLCs are not subject to execution for Lindgren's personal liability. Lindgren cannot shield assets through the use of entities and then contend he has sufficient assets to pay the judgment to advance his legal argument in this case.